CINCINNATI INSURANCE
COMPANY, Appellant,

v.

John M. MALLON, Jr., and Ronald
Mitulla, et al., Appellees.

No. 2–1078A362.

Court of Appeals of Indiana,
Second District.

May 19, 1980.

Peter B. Stewart, Indianapolis, for appellant.

Marc A. Bleecker, Indianapolis, for appellees.

BUCHANAN, Chief Judge.

MEMORANDUM DECISION

Cincinnati Insurance Company (Cincinnati) appeals the trial court's judgment finding coverage under an insurance policy issued for Frame Designs II (Frame Designs)

on a claim by Harrison Eiteljorg (Eiteljorg), a customer.

We reverse and remand.

On July 22, 1974, Eiteljorg brought a number of paintings to Frame Designs, a business operated by John M. Mallon, Jr. (Mallon) and Ronald Mitulla, to have the paintings framed.

During the frame selection process, Mallon made a longhand inventory list of each picture and the type frame selected. When frame selection had been completed, Mallon stated that Eiteljorg had brought in 22 pictures, to which Eiteljorg responded "correct." Neither man actually counted the paintings at that time.

Mallon left the paintings and the longhand inventory list on the side of a counter in Frame Designs' showroom, intending to complete the work tickets for each item the following day.

After returning from an out–of–town trip the next day, Mallon went to the showroom. He prepared the workshop tickets for framing Eiteljorg's pictures. Upon recounting his longhand inventory list, the work tickets, and the paintings themselves, Mallon discovered he had only 21 paintings.

After searching the showroom and the workroom of Frame Designs, Mallon noti-

fied Eiteljorg that he had only brought in 21 paintings. Eiteljorg, however, insisted that he had brought in 22 paintings. An exhaustive search to discover the missing painting proved fruitless.

At this time, Frame Designs had in effect a multi–peril insurance policy with Cincinnati (the Policy). The Policy basically provided four separate types of coverage: property, liability, automobile, and plate glass. Mallon notified Cincinnati's agent as to Eiteljorg's claim for the missing painting.

Cincinnati's insurance adjuster contacted Frame Designs and took a recorded statement from Mallon and Mitulla. Cincinnati subsequently denied the claim of Eiteljorg, and advised Frame Designs that Cincinnati would not furnish a defense.

On February 27, 1975, Eiteljorg filed suit against Frame Designs. Frame Designs responded on May 20, 1975, by filing its answer and a third party complaint against Cincinnati for defense and indemnification under the Policy.

The third party complaint, which is the subject of this appeal, was tried separately on June 1, 1977. The trial court issued its Findings of Fact and Judgment on April 18, 1978.[1]

---

1. The Findings of Fact and Judgment stated, in pertinent part:

7. Cincinnati's investigation of this claim or potential claim consisted of the recorded statement, and a telephone conversation with Eiteljorg's employee, Jack Holiday.

8. That after this cursory investigation by the adjuster, Jan Deemer, Cincinnati wrote Eiteljorg a letter denying his claim on November 29, 1974.

9. On January 16, 1975, Cincinnati notified Frame Designs by letter that they would not provide a defense for Frame Designs because there was no coverage for the missing painting on the claim of Harrison Eiteljorg.

10. That Jan Deemer, adjuster for Cincinnati, did not review or examine Frame Designs' insurance policy prior to the denying of the claim of Harrison Eiteljorg and the Third–Party Plaintiffs' coverage under the insurance policy, and did not know what riders or endorsements were included in the policy of Frame Designs.

11. The material and pertinent parts of the insurance agreement between the Third–Party

Plaintiffs and the Third–Party Defendant are as follows:

In the Broad Form Liability Insurance Coverage Part the policy states:

'1. The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damage because of

Coverage A. bodily injury or

Coverabe [sic] B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless false or fraudulent, and may make such investigation and settlement of any claims or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.'

From this judgment, Cincinnati appeals.

Cincinnati's allegations of error may be condensed into a single issue:

Did the trial court erroneously ignore and fail to give effect to exclusions contained in the Policy?

Cincinnati asserts that the trial court in effect rewrote the contract between the parties by ignoring specific exclusions in both the property coverage and the liability coverage, while inappropriately blending together other provisions in order to find coverage. Frame Designs contends that in

> 'Occurrence' is defined in the policy as follows:
> 'Occurrence' means an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
> The Comprehensive Industrial Coverage, identified as Form IM–121 (10/73), Item 4 states: 'Perils Insured Against'
> 'This policy insures against all risks of direct physical loss of or damage to the insured property from any external cause except as hereinafter excluded.'
> Item 6, Form IM–121 (10/73) provides: 'Property Covered'. The policy covers:
> A. Personal property usual to the conduct of the insured's business, consisting principally of ** Picture Frame Assembly and Store ** (the underlined section represents a typed addition to the policy) the property of the Insured, or similar property of others held by the insured . . . ., except as provided elsewhere in this policy;
> Paragraph 12(c) Form IM-121 (10/73) provides:
> 'On property of others, excluding negatives and prints, in the custody or control of the Insured the company shall not be liable for more than the amount for which the insured is legally liable but in no event to exceed the actual cash value at the time and place of loss, including labor performed and mateials expended thereon to the time of loss.'
> The provisions of the Comprehensive Industrial Coverage, Item 14 states: 'Property of Others'
> 'In case of loss of or damage to property of others, for which claim is made upon the company, the right to adjust such loss or damage with the owners of the property is reserved to the company and the receipt of such owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the insured for which such payment has been made. If legal proceedings be taken to endorse a claim against insured as respects any such loss or damage, the company reserves the right at its option without expense to the

reading the Policy as a whole, coverage for this type of loss is provided.

## DECISION

The trial court erred in ignoring the exclusions in the Policy, and therefore its judgment must be reversed, and this cause remanded for further proceedings.

Two specific exclusions in the Policy are in question.

In the Property Coverage section of the Policy, the following exclusion was clearly set forth:

> insured to conduct and control the defense on behalf and in the name of the insured. No action of the company in such regard shall increase the liability of the company under this policy, nor increase the limits of liability provided herein.
> 12. Under the terms of the comprehensive coverage in this insurance policy, the Third–Party Defendant has a duty to defend the Third Party Plaintiffs, and that duty arose upon the claim being made for the alleged loss of property of Harrison Eiteljorg. The failure of the Plaintiff, Harrison Eiteljorg, to state his complaint in detailed language does not represent nor present a burden to the Defendant and Third-Party Plaintiffs since we are under notice pleading sufficient to put the Defendants on notice of the nature of the claim, and not every specific allegation has to be set out in the complaint. The Third–Party Defendant has an obligation in this case to defend the Third–Party Plaintiffs.

13. Frame Designs was and is entitled to a defense from Cincinnati on the action of the Plaintiff in this cause.

### JUDGMENT ENTRY

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Third–Party Plaintiffs recover from the Third-Party Defendant, Cincinnati Insurance Company, the sum of Two Thousand Three Hundred Dollars ($2,300.00).

IT IS FURTHER ORDERED ADJUDGED AND DECREED that the Cincinnati Insurance Company has an obligation and a duty to represent and defend the Third Party Plaintiffs and Defendants in this case under the terms of the policy of insurance between the parties.

IT IS ALSO ORDERED ADJUDGED AND DECREED that the Cincinnati Insurance Company is liable to the Defendants and Third–Party Plaintiffs for any sum that the Plaintiff, Harrison Eiteljorg, may recover of and from the Defendants and Third-Party Plaintiffs in this cause and for all costs including costs of defense.

8. PERILS EXCLUDED

This policy does not insure against loss or damage:

.    .    .    .    .

(g) caused by mysterious disappearance; nor loss or shortage disclosed upon taking inventory;

The second exclusion in question is contained in the Liability Coverage section of the Policy, and states:

EXCLUSIONS

This insurance does not apply:

.    .    .    .    .

(j) to property damage

.    .    .    .    .

(2) except with respect to liability under a written sidetrack agreement or the use of elevators to

(i) property while on premises owned by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured,

■ An insurance policy is a contract between the parties; in determining policy liabilities, the law of contract applies. *American States Ins. Co. v. Aetna Life & Casualty Co.* (1978), Ind.App., 379 N.E.2d 510. Courts are not unmindful of the great disparity in bargaining power between insurance companies and their insureds, which has resulted in special rules of construction concerning insurance policies. *See, e. g., Taylor v. American Underwriters, Inc.* (1976), Ind.App., 352 N.E.2d 86; *United Farm Bureau Ins. Co. v. Pierce* (1972), 152 Ind.App. 387, 283 N.E.2d 788 (ambiguous clauses are construed in favor of the insured); *Utica Mutual Ins. Co. v. Ueding* (1977), Ind.App., 370 N.E.2d 373, 376 (insured entitled to most favorable reading of conflicting clauses). Nevertheless, a court cannot rewrite an insurance contract for the parties. *American States Ins. Co. v. Aetna Life & Casualty Co., supra; Home Insurance Co. v. Neilsen* (1975), 165 Ind. App. 445, 332 N.E.2d 240; *Ely v. State Farm Mutual Automobile Ins. Co.* (1971), 148 Ind.App. 586, 268 N.E.2d 316.

■ An insurance company is free to determine by its contract what risks it is undertaking to insure, provided policy provisions do not violate statutory mandates or are not against public policy. As summarized in 43 Am.Jur.2d, *Insurance* § 279:

[S]ince the parties to an insurance contract may make the contract in any legal form they desire, insurance companies have, in the absence of statutory provisions to the contrary, the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy. Consequently, if such exceptions, exclusions and limitations are plainly expressed, insurers are entitled to have them construed and enforced as expressed.

■ It is true that an ambiguous insurance contract must be construed liberally in favor of the insured. *Taylor v. American Underwriters, Inc., supra.* It is also true that if a contract is clear and unambiguous it must be given its plain meaning. *Vernon Fire & Casualty Ins. Co. v. American Underwriters, Inc.* (1976), Ind.App., 356 N.E.2d 693. *See Continental Life Insurance Co. v. Malott,* 89 Ind.App. 263, 166 N.E. 15. The policy before us is clear and unambiguous and therefore is not in need of liberal construction. It appears exclusions in the Policy were not given consideration.

■ Among the perils excluded is one "caused by mysterious disappearance." Property is also excluded which is damaged "while on premises owned by or rented to the insured for the purpose of having operations performed on such property  ...."

Neither Frame Designs nor the trial court has directed us to any persuasive reason why these provisions should not be given effect. Nor has our reading of the Policy indicated any other provisions inconsistent therewith nor any reason why these apparently applicable exclusions should not be given due consideration by the trial court.

Frame Designs points to three provisions in the property coverage and argues these

provisions somehow nullify the exclusion in the property coverage.

Frame Designs first points to the following provision:

### 4. PERILS INSURED AGAINST

This policy insures against all risks of direct physical loss of or damages to the Insured property from any external cause *except as hereinafter excluded.* (emphasis supplied)

As is apparent from even a cursory reading, this provision gives specific warning that certain perils will be excluded at later points in the Policy.

Frame Designs next points to the property covered provision:

### 6. PROPERTY COVERED

The policy covers:

A. Personal property usual to the conduct of the Insured's business, consisting principally of Picture Frame assembly and Store the property of the Insured, or similar property of others held by the Insured, *except as provided elsewhere in this policy*;

B. Tenants Improvements and Betterments (meaning the Insured's use interest in fixtures, alterations, installments or additions comprising a part of a building occupied but not owned by the Insured and made at the expense of the Insured, but which are not legally subject to removal by the Insured). (emphasis supplied)

This has no effect on exclusion for two reasons. First, Cincinnati does not contend that the property of others was not to some extent covered by the Property Coverage. Rather, Cincinnati claims that the *peril* which resulted in the claim was excluded. Additionally, there is also the caveat that the property of others held by the insured is not insured in all cases, but rather there are exceptions elsewhere in the Policy.

Finally, Frame Design latches on to the following provision for support:

### 14. PROPERTY OF OTHERS

In case of loss of or damage to property of others, for which claim is made upon the Company, the right to adjust such loss or damage with the owners of the property is reserved to the Company and the receipt of such owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the Insured for which such payment has been made. If legal proceeding be taken to enforce a claim against the Insured as respects any such loss or damage, the Company reserves the right at its option without expense to the Insured to conduct and control the defense on behalf of and in the name of the Insured. No action of the Company in such regard shall increase the liability of the Company under this policy, nor increase the limits of liability provided herein.

This language in no way attempts to limit or expand coverage under the Policy. Rather, it delineates the company's rights in dealing with and settling property claims with third persons.

As to the Liability Coverage exclusion, Frame Designs asserts that this is somehow negated by paragraph 12(c) of the Property Coverage. This provision states:

### 12. VALUATION

(c) On property of others, excluding negatives and prints, in the custody or control of the Insured the Company shall not be liable for more than the amount for which the Insured is legally liable but in no event to exceed the actual cash value at time and place of loss, including labor performed and materials expended thereon to the time of loss;

First, we note that Frame Designs, as did the trial court, attempts to intertwine the provisions of the separate and distinct coverages into a confusing swirl. The provisions in the Property Coverage and Liability Coverage are not interchangeable. Furthermore, even if such were the case, paragraph 12(c) deals only with how property is valued. It does not in any way attempt to expand or limit the coverage of the policy.

Therefore, we must reverse and remand this case to the trial court for further proceedings not inconsistent herewith. *See, e. g., American Family Mutual Ins. Co. v. Bentley* (1976), Ind.App., 352 N.E.2d 860; *Automobile Underwriters, Inc. v. Hitch* (1976), Ind.App., 349 N.E.2d 271.

Because we are remanding this case, the problem of the nature of an insurance company's duty to defend, specifically in regard to the notice pleading provision of our trial rules,[2] may arise again.

So, we make certain observations. The traditional view is that a duty to defend is determined solely by the allegations in a complaint. *See* 14 Couch on Insurance (2d ed. 1965) §§ 51:40–41; 7C Appleman, Insurance Law and Practice (Burdal ed. 1979) § 4683.

But this traditional view does not fit well with the modern concept of notice pleading in which specific allegations are not necessary.

The insurance company finds itself in a quandary: must it defend if the complaint *could* encompass some type of coverage within the insurance policy, or may it go beyond the face of the complaint and look to the ascertainable factual basis underlying the complaint?

Indiana follows the latter view. The insurance company may go beyond the face of the complaint, and refuse to defend based upon the factual underpinnings of the claim. *U. S. Fidelity & Guaranty Co. v. Baugh* (1970), 146 Ind.App. 583, 257 N.E.2d 699 (transfer denied December 15, 1970).[3]

This follows the view expressed in 7C Appleman, Insurance Law & Practice, *supra*, § 4683 at 53:

[M]odern rules of pleading and practice focus on the facts of the case rather than on the theory of recovery stated in the complaint, and where the insurer is aware of facts, not in the pleadings, which clearly disclose an absence of coverage, it can refuse to defend or clarify its obligation by means of a declaratory judgment action. If it refuses to defend, it does so at its peril, but it should not be required to defend a case in which it has no economic interest. (footnotes omitted)

*See also American States Ins. Co. v. Aetna Life & Casualty Co., supra.*

■ This view does not relieve the insurance company of its contractual duty to defend unfounded, false or fraudulent suits based upon risks it has insured. Its duty to defend is still broader than its coverage liability. *See* 14 Couch on Insurance, *supra* §§ 51:44, 48. But when the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend. *See* 7C Appleman, Insurance Law and Practice, *supra*, § 4683 at 50. In other words, it is the nature of the claim and not its merits that determines the duty to defend. 14 Couch on Insurance, *supra* § 51:44.

**2.** Ind.R.Tr.P. 8(A) states:

(A) Claims for relief. To state a claim for relief, whether an original claim, counterclaim, cross–claim, or third–party claim, a pleading must contain

(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and

(2) a demand for the relief to which he deems himself entitled.

Relief in the alternative or of several different types may be demanded.

In this regard, the trial court stated in its Findings of Fact:

12. Under the terms of the comprehensive coverage in this insurance policy, the Third-Party Defendant has a duty to defend the Third–Party Plaintiffs, and that duty arose upon the claim being made for the alleged loss of property of Harrison Eiteljorg. The failure of the Plaintiff, Harrison Eiteljorg, to state his complaint in detailed language does not represent nor present a burden to the Defendant and Third–Party Plaintiffs since we are under notice pleading sufficient to put the Defendants on notice of the nature of the claim, and not every specific allegation has to be set out in the complaint. The Third–Party Defendant has an obligation in this case to defend the Third–Party Plaintiffs.

**3.** Although this opinion was criticized in *All–Star Insurance Corp. v. Steel Bar, Inc.* (N.D. Ind.1971) 324 F.Supp. 160, we do not find the federal court's reasoning sufficiently persuasive to overrule the guiding Indiana precedent of *U. S. Fidelity & Guaranty Co. v. Baugh, supra.*

We reverse and remand to the trial court for further action not inconsistent herewith.

RATLIFF, J., by designation, concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

### MEMORANDUM DECISION

The policy issued by Cincinnati Insurance Company (Cincinnati) to Frame Designs was a multiperil policy divided into two distinct coverage sections. Section I, relating to Property Coverage, specifically excludes loss or damage caused by mysterious disappearance. Section II, relating to Liability Coverage, specifically excludes property damage where the property is on the insured's premises "for the purpose of having operations performed on such property by or on behalf of the insured." The majority holds that the trial court failed to give proper consideration to these exclusions and accordingly reverses and remands the case to the trial court on that issue.

While I concur in that result, I would nevertheless affirm that portion of the trial court judgment dealing with the issue of Cincinnati's duty to defend Frame Designs. In one renowned insurance treatise, it is said that the duty to defend is separate and distinct from the duty to pay:

"[T]he duty [to defend] has nothing to do with the merits of the claim and is not dependent upon liability because the insurer agrees to defend 'even if any of the allegations of the suit are groundless, false or fraudulent'. Therefore an insurer is obligated to provide a defense whenever the allegations state facts, which if true, are within the ambits of the protection promised to the policyholder." 7C Appleman, *Insurance Law & Practice* § 4682, pp. 22–23.

The duty to defend is determined at the time the suit is brought, *not* at the conclusion of the litigation. *Id.* at § 4684, p. 85. Thus it has been held that the obligation to defend matures when the action is brought and it is immaterial whether the trial re-

sults favorably or unfavorably to the insured. *Employers' Liability Assurance Corp. v. Youghiogheny & Ohio Coal Co.* (8th Cir. 1954) 214 F.2d 418, 422. *See also* 44 Am.Jur.2d Insurance, § 1539, pp. 420–21.

Cincinnati was faced with the following complaint:

### "COMPLAINT FOR DAMAGES

Comes now the Plaintiff, Harrison Eiteljorg, by counsel, and for his cause of action says:

1. Defendants are residents of Marion County, Indianapolis, Indiana.

2. That on or about July 14, 1974, Plaintiff delivered to Defendants twenty-two (22) paintings by Leon Gaspard to be framed.

3. That on or about August 15, 1974, Plaintiff received from Defendants twenty-one (21) of the twenty-two (22) paintings delivered to Defendants for framing.

4. Defendants were unable to locate and deliver to Plaintiff the last remaining painting by Leon Gaspard entitled "Russian Fair".

5. Plaintiff several times has demanded from the Defendants the return of the painting by Leon Gaspard entitled "Russian Fair", and Defendants have been unable to deliver said painting to Plaintiff.

6. That said painting "Russian Fair" by Leon Gaspard is valued at $10,000.00.

WHEREOF, Plaintiff prays for a judgment against the Defendants, and each of them, in the amount of $10,000.00, costs of this action, and for all other relief just and proper in the premises."

This complaint does not appear to set forth any specific theory of recovery nor does it attribute the loss of the painting to any one cause. In Indiana, it is well settled that an insurer's duty to defend is determined by the allegations of the complaint coupled with those facts known to or ascertainable by the insurer after a reasonable investigation.[1] *American States Insurance Co. v.*

---

1. It may be noted that Cincinnati refused to defend Frame Designs without regard to the

policy exclusions. As the majority notes, the trial court made the following finding of fact:

*Aetna Life & Casualty Co.* (3d Dist. 1978) Ind.App., 379 N.E.2d 510. Unless non–coverage appears, the insurer's duty to defend is triggered. This duty was elucidated in G. Couch, 14 *Cyclopedia of Insurance Law* § 51:45, p. 538 (2d ed. R. Anderson 1965):

> "the insurer's duty to defend against a claim coming within the policy coverage is not discharged by the fact that the plaintiff's pleading is not perfect: that is, the insurer's obligation is not merely to defend in cases of perfect declarations, but also *where by any reasonable intendment of the pleadings* liability of the insured can be inferred, and neither ambiguity, inconsistency, nor duplicity in the plaintiff's complaint or declaration can justify escape of the insurer from its obligation to defend." (Emphasis supplied.)

Even if the insurer knows the allegations to be untrue, the obligation to defend even groundless suits compels the insurer to defend unless the claim is clearly shown to be excluded by the policy. *Loftin v. U. S. Fire Insurance Co.* (1962) 106 Ga.App. 287, 127 S.E.2d 53. As an Ohio Court noted:

> "There is but one question for this court to determine. It is: Did the pleadings bring this action within the coverage of the policy? If they did, the insurance company was required to defend, regardless of its ultimate liability to the insured." (Citations omitted.) *First National Bank of Akron v. Ohio Casualty Insurance Co.* (1953) 101 Ohio App. 37, 137 N.E.2d 770.

In my opinion, the trial court correctly determined that Cincinnati breached its duty to defend. I would affirm the portion of the trial court judgment which awarded the insured, Frame Designs, costs and expenses to be incurred in defending the claim.

"10. That Jan Deemer, adjuster for Cincinnati, did not review or examine Frame Designs' insurance policy prior to the denying of the claim of Harrison Eiteljorg and the Third–Party Plaintiff's coverage under the insurance policy, and did not know what riders or endorsements were included in the policy of Frame Designs."

This merely reinforces my view that not only is the duty to defend a separate duty from the duty to indemnify the insured under the coverage of the policy, but that Cincinnati so considered it.