# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3446

HOME FEDERAL SAVINGS BANK,

*Plaintiff-Appellant*,

*v.*

TICOR TITLE INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:10-cv-0999—**Jane E. Magnus-Stinson**, *Judge.*

ARGUED APRIL 9, 2012—DECIDED SEPTEMBER 6, 2012

Before FLAUM and HAMILTON, *Circuit Judges*, and
FEINERMAN, *District Judge.*[*]

HAMILTON, *Circuit Judge.* This case concerns a title
insurance policy covering a construction project. The
plaintiff is the insured party, Home Federal Savings
Bank, which agreed to lend up to $95.5 million to finance

_____

[*] The Honorable Gary Feinerman of the Northern District
of Illinois, sitting by designation.

the construction of a new ethanol production plant. When the developer of the plant ran into serious trouble finishing the project, the bank did not disburse the final $8 million of the loan amount. The developer defaulted on the debt to the bank and fired its general contractor, which then filed a mechanic's lien on the property to recover $6 million allegedly owed it. When the bank sought to foreclose on its mortgage, the general contractor counterclaimed, asserting that its lien had priority over, or at least parity with, the bank's mortgage. The plaintiff bank tendered its defense to the defendant title insurer under a policy that required the insurer to defend the bank against a "claim . . . alleging a defect, lien or encumbrance or other matter insured against by this policy." The policy contained an exclusion from coverage for claims "created, suffered, assumed, or agreed to" by the insured. On cross-motions for summary judgment, the district court ruled in favor of the title insurer. We reverse and remand. The undisputed facts show that the title insurer breached its duty to defend the bank on the contractor's claim that its mechanic's lien had priority over or parity with the mortgage.

I. *Factual and Procedural Background*

The material facts are not in dispute. The case arises from a construction project that fell apart in 2008. The developer was Altra, Indiana, LLC, which in 2006 obtained a construction loan commitment for up to $95.5 million from plaintiff Home Federal Savings

Bank to finance the construction of an ethanol plant in Cloverdale, Indiana. The loan was to be disbursed in installments. To secure its loan, Home Federal had a mortgage on the property. To protect its security from conflicting claims of ownership or prior mortgages or liens, Home Federal purchased title insurance from defendant Ticor Title Insurance Company. Under the policy, Ticor performed a title search after each disbursement Home Federal made, insuring against any loss the bank might incur due to "Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material."

Home Federal also paid an extra premium for a mechanic's lien endorsement to insure against "enforcement or attempted enforcement" of a mechanic's lien claim "having priority over or sharing on a parity with" the mortgage.[1] The policy obligated Ticor to

---

[1] The Mechanic's Lien Endorsement provided:

Anything contained in said policy to the contrary notwithstanding, the Company insures against loss or damage incurred by the insured by reason of the enforcement or attempted enforcement of any statutory lien for labor or material arising from construction contracted for and/or commenced on the land prior to, at, or subsequent to the effective date of said policy, and any extension of said date, as having priority over, or sharing on a parity with, the lien of the insured mortgage for that portion of the proceeds of the loan secured thereby advanced for the purpose of paying the costs of the acquisition of the

(continued...)

defend Home Federal "in litigation in which any third party asserts a claim . . . alleging a defect, lien or encumbrance or other matter insured against by this policy," and insured Home Federal to the extent of the amount already disbursed to Altra, up to the $95.5 million total of the loan.

When Home Federal distributed additional funds as construction proceeded, it would secure lien waivers from each contractor paid with the funds and ask Ticor to update the policy, which Ticor did after performing a new title search and receiving the contractors' lien

---

(...continued)

land and the development of and the construction of improvements on the land, including by [sic] not limited to the cost of labor or materials incurred therewith. At the time of each disbursement of the proceeds of the loan, the title must be searched by Royal Title Services, Inc., down to such time, for possible liens or objections intervening between the date hereof and the date of such disbursement.

This endorsement is made a part of the policy or commitment and is subject to all the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy or commitment and prior endorsements, if any nor does it extend the effective date of the policy or commitment and prior endorsements or increase the face amount thereof.

waivers from Home Federal.[2] This case centers on two policy updates made in September 2008. On September 24, 2008, Ticor issued Update 15 pursuant to Home Federal's request. Update 15 revealed no defects, liens, or encumbrances on the estate that are relevant to the case. At that point, more than $87 million of the loan proceeds had been disbursed and accounted for by lien waivers. A serious dispute then arose between Altra and the project's general contractor, F.A. Wilhelm Construction Co. ("Wilhelm"). Altra fired Wilhelm on September 26. That same day, Wilhelm filed a mechanic's lien on the property claiming it was owed $6 million for work on the project.

Suspecting that such a lien had been filed, Home Federal requested on October 27 that Ticor perform a title search. Ticor's October 30 update disclosed Wilhelm's lien and made it an express exception from coverage. Cue the litigation.

First, in January 2009, Home Federal filed suit against Altra in state court to recover the $96 million then due under the loan and to foreclose Home Federal's mortgage on the plant property. Home Federal named Wilhelm as a defendant because of its mechanic's lien.

---

[2] AgStar Financial Services, Inc. acted as Home Federal's loan servicer. Likewise, Royal Title Services, Inc. issued Home Federal's policy, which was underwritten by Ticor, and Royal prepared each title search and update. For convenience, we refer to Agstar and Home Federal collectively as "Home Federal," and to Royal and Ticor as "Ticor."

The following month, Wilhelm answered and filed a counterclaim against Home Federal and a cross-claim against Altra seeking to foreclose on its $6 million mechanic's lien. Wilhelm asserted that it was entitled to enforce its lien against the entire property, claiming priority over Home Federal's mortgage. Ticor itself acknowledged that Wilhelm was seeking a judgment determining that its lien was prior to and superior to the interest of the Agstar/Home Federal mortgage.

On April 3, 2009, Home Federal tendered the defense of Wilhelm's mechanic's lien to Ticor, seeking defense in the suit and indemnity for any loss should Wilhelm prevail. After conducting an investigation, Ticor denied Home Federal's request for defense and indemnification. Left to fend for itself in state court, Home Federal moved for summary judgment against Wilhelm, asserting the priority of its mortgage over the mechanic's lien. Home Federal eventually reached a settlement by paying Wilhelm $1.8 million on its counterclaim, with no contribution from Ticor.

Home Federal then filed this suit in federal court alleging that Ticor acted in bad faith and breached its duties to defend against Wilhelm's counterclaim and to indemnify Home Federal for the settlement and attorney fees. On cross-motions for summary judgment, the district court granted summary judgment for Ticor. *Home Fed. Sav. Bank v. Ticor Title Ins. Co.*, No. 1:10-cv-0999-JMS-TAB, 2011 WL 4479080 (S.D. Ind. Sept. 27, 2011). The court relied on a policy exclusion for any "Defects, liens, encumbrances, adverse claims or other matters . . .

created, suffered, assumed or agreed to or by the Insured claimant." The court found that the exclusion applied because Home Federal withheld disbursement of the funds that could have satisfied Wilhelm's claim. The district court also noted that since all $87 million in disbursements Home Federal made had been fully accounted for with waivers of mechanic's liens, "Home Federal seeks to obtain a windfall — avoiding more than $6 million [in] construction bills without having risked any of its own funds." 2011 WL 4479080, at *6. Home Federal has appealed.

II. *Discussion*

We review *de novo* the district court's decision on cross-motions for summary judgment. *E.g.*, *Exelon Generation Co. v. Local 15, Int'l Bhd. of Elec. Workers*, 676 F.3d 566, 570 (7th Cir. 2012). Subject-matter jurisdiction is based on diversity of citizenship, see 28 U.S.C. § 1332, and the parties agree that Indiana law applies to interpretation of the insurance policy. In Indiana, the meaning of an insurance policy is a matter of law, and in general the same rules of construction apply to insurance policies as to other contracts. See *Commercial Union Ins. v. Moore*, 663 N.E.2d 179, 180 (Ind. App. 1996). Any ambiguity in the policy will be construed strictly against the insurer, particularly where the scope of a coverage exclusion is at issue. See *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012). An insurer's duty to defend an insured is broader than its duty to indemnify,

so if an insurer has no duty to defend its insured in a suit, it necessarily does not have a duty to indemnify the insured for any liability incurred thereby. See *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. App. 1991).[3]

The decisive issue here is the duty to defend. Where an insurer elects not to defend its insured, "Such a course is taken at the insurer's peril because the insurer will be bound at least to the matters necessarily determined in the lawsuit." *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 762 N.E.2d 1227, 1231 (Ind. 2002) (internal quotation marks and emphasis omitted); *Frankenmuth Mut. Ins. Co. v. Williams*, 690 N.E.2d 675, 678-79 (Ind. 1997). We address first Ticor's argument that the Wilhelm counterclaim did not trigger the duty to defend because it did not actually seek priority over or parity with the Home Federal mortgage. We turn then to the basis for the district court's decision, the policy exclusion for liens created, suffered, assumed or agreed to or by the insured.

---

[3] The district court's opinion seems to have reversed or at least confused this logic, addressing first the "Duty to Indemnify," finding none, and then stating in a one-sentence discussion under the heading "Duty to Defend": "Because, for reasons expressed above, Ticor had no duty to indemnify Home Federal with respect to the Wilhelm claim, it necessarily had no duty to indemnify [*sic*] Home Federal either." 2011 WL 4479080, at *6, citing *Ace Rent-a-Car, Inc. v. Empire Fire & Marine Ins. Co.*, 580 F. Supp. 2d 678, 690 (N.D. Ill. 2008) (applying Indiana law and stating correctly that if insurer had no duty to defend, it necessarily had no duty to indemnify).

A.  *Wilhelm Sought Priority or Parity*

The policy's "Defense and Prosecution" clause re-
quired Ticor to "provide for the defense of an insured
in litigation in which any third party asserts a claim
adverse to the title or interest as insured, but only as to
those stated causes of action alleging a defect, lien or
encumbrance or other matter insured against by this
policy." Under the mechanic's lien endorsement, one
matter insured against was any litigation in which a
third party claimed its mechanic's lien had priority over
or parity with Home Federal's mortgage on the property:

> the Company Insures against loss or damage incurred
> by the insured by reason of the enforcement or *at-*
> *tempted enforcement* of any statutory lien for labor
> or material arising from *construction contracted for*
> *and/or commenced* on the land *prior to, at, or subsequent*
> *to the effective date of said policy*, and any extension of
> said date, as having priority over, or sharing on a
> parity with, the lien of the insured mortgage for that
> portion of the proceeds of the loan secured thereby . . . .

(Emphases added.) Two things are important about this
clause. First, it confirmed that Ticor must defend
and indemnify Home Federal against enforcement or
*attempted* enforcement of a claim asserting priority over
or parity with the mortgage. Second, the covered
claims were not limited to those that arose prior to the
effective date of the policy, as extended by updated
endorsements. Rather, the mechanic's lien endorsement
covered any claim "arising from construction contracted
for and/or commenced on the land prior to, at, or *subse-*

*quent to* the effective date." While the policy "insure[d] only to the extent of the amount actually disbursed," that clause limited the "amount" of recovery, not the temporal scope of covered claims.[4]

---

[4] Many title insurance policies insure only against mechanic's liens arising *before* the endorsement date and for which labor or materials have already been furnished. See Joyce Palomar, *Title Insurance Law* § 9:9 (stating that American Land and Title Association (ALTA) Construction Loan Policy Endorsement A "does not insure the priority of the mortgage lien over mechanics' liens resulting from work performed or materials supplied subsequent to the endorsement date"). So why would Ticor insure Home Federal against liens arising after the effective date of the latest update? The answer probably lies in Indiana construction law, which gives commercial construction mortgages priority over all later recorded mechanic's liens. See Ind. Code § 32-28-3-5(d); see also Palomar, *supra*, § 9:9 & n.6 ("in states where statutes give the construction mortgage lien priority over all mechanics' liens, regardless of whether the insured lender made all disbursements obligatory under the mortgage documents," the standard endorsement covers any "loss or damage sustained by reason of lack of priority of the lien . . . over any statutory lien for services, labor or material heretofore or hereafter furnished"). This means that Ticor could safely insure Home Federal against any loss incurred due to the enforcement of a later-recorded mechanic's lien because the risk of successful enforcement was close to zero. The risk of *attempted* enforcement of such a lien was not zero, however, for even a frivolous claim counts as an "attempt." As we shall see, Ticor's refusal to defend its insured against one such apparently futile

(continued...)

Wilhelm's original counterclaim stated that Wilhelm was "entitled to enforce its mechanic's lien claim . . . against the entire land . . . without impairment by mortgage foreclosure." Dkt. 44-3 at 17, ¶ 10. That counterclaim was unambiguously within the scope of Ticor's duty to defend, and Ticor quickly understood as much. A letter from Ticor's claim counsel to an attorney for Home Federal said, based on the original counterclaim: "Wilhelm is seeking a judgment determining that its Lien is prior to and superior to the interest of the Agstar [i.e., Home Federal] Mortgage against the subject property." Dkt. 44-3 at 32.

Yet Ticor now contends on appeal that the Wilhelm counterclaim was *not* an "attempted enforcement" of a statutory lien asserting "priority over, or sharing on a parity with, the lien of the insured mortgage." It offers two reasons, but both suffer from the same underlying mistake. (The district court did not base its decision on these arguments by Ticor.) First, Ticor asserts that "Wilhelm did not allege priority over the Mortgage" because it simply "mirrored the statute" that "provides a right of removal to a lien claimant within 90 days if the land is encumbered by a mortgage." Ticor Br. 15, citing Ind. Code § 32-28-3-2. According to Ticor, this was the "wrong" statute, so "no defense was required." *Id*. The undisputed facts show that this argu-

---

(...continued)

attempt was a breach of its duties under the mechanic's lien endorsement.

ment is frivolous. The duty to defend depends on what the claimant alleges, not the ultimate merit or lack of merit of the claim. *E.g.*, *Terre Haute First Nat'l Bank v. Pac. Employers Ins. Co.*, 634 N.E.2d 1336, 1339 (Ind. App. 1993). The original counterclaim plainly asserted priority over the Home Federal mortgage. That is how Ticor understood it at the time. Even if there had been any ambiguity then, Wilhelm's amended counterclaim was even more explicit, offering several theories for barring Home Federal from enforcing its mortgage with priority over Wilhelm's mechanic's lien. Dkt. 44-4 at 14-16.

Second, Ticor argues, because the applicable Indiana statute gives priority to a commercial construction mortgage over all later-recorded mechanic's liens, see Ind. Code § 32-28-3-5(d), "the Wilhelm Lien could not attain priority over or stand in parity with the Mortgage." Ticor Br. 16. Ticor compliments Home Federal's efforts in the state court foreclosure case, saying it "properly argued that the Wilhelm Lien was inferior to the Mortgage" in its motion for summary judgment against Wilhelm, correctly identifying the statutory authority and supporting case law. *Id.* In other words, Ticor argues that it had no duty to defend Home Federal from Wilhelm's counterclaim because Wilhelm didn't have a prayer of prevailing. Home Federal could take care of itself.

That argument also runs flatly contrary to the most basic principle of an insurer's duty to defend. Under the policy, Ticor had a duty to defend against any claim

"attempt[ing]" to enforce a lien as having priority over or parity with the mortgage. Wilhelm's counterclaim plainly did so, even if it might have been a sure loser. "It is the nature of the claim, not its merit, which establishes the insurer's duty to defend." *Terre Haute First Nat'l Bank*, 634 N.E.2d at 1339, quoting *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. App. 1991). An "insurance company has a contractual duty to defend unfounded, false and fraudulent suits based upon risks it has insured." *Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502, 505 (Ind. App. 1991), citing *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. App. 1980). Wilhelm's counterclaim presented a risk that Home Federal's policy specifically insured against — a statutory lien seeking priority over or parity with the mortgage. Wilhelm's claim might have been weak, even hopeless, but that lack of merit could not absolve Ticor of its duty to defend against the attempted enforcement of a mechanic's lien with priority over the mortgage.

Ticor tries to avoid these principles by quoting *Mallon*, where the Indiana Court of Appeals wrote: "when the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." 409 N.E.2d at 1105, citing 7C J. A. Appleman, *Insurance Law and Practice* § 4683, at 50 (W. F. Berdal ed., 1979). *Mallon* is perfectly consistent with the principles we rely on above. As noted, the *Mallon* court stated the general point that the duty to defend applies to "unfounded, false or fraudulent suits based upon risks it has insured." *Id.* The *Mallon* court based

its decision, however, not on the merits of the underlying claim but on policy exclusions that would have applied even if the underlying claim had been valid. *Id.* The court did not suggest that an insurer is entitled to ignore the relief the claimant actually seeks against its insured and to refuse to defend on the theory that the claimant cannot possibly prevail as a matter of law. Wilhelm's counterclaim sought to enforce a lien as having priority over or parity with Home Federal's insured interest in the plant's mortgage. Unless a coverage exclusion applied, Ticor breached its duty to defend under the policy.

B.  *The "Created or Suffered" Exclusion*

The only relevant exclusion, the parties agree, excludes from coverage claims "created, suffered, assumed or agreed to or by the Insured claimant." Coverage exclusions are construed strictly against the insurer, and the insurer bears the burden of showing that an exclusion applies. See *Hoosier Ins. Co. v. Audiology Found. of America*, 745 N.E.2d 300, 309 (Ind. App. 2001). The "created or suffered" exclusion is a standard one in title insurance contracts, and it is apparently "[o]ne of the most litigated" clauses in the field. Palomar, *Title Insurance Law* § 6:10.

From Ticor's brief, we can discern three separate arguments in support of its assertion that the "created or suffered" exclusion applies. First, Ticor contends that Home Federal "created, suffered, assumed, or agreed to the Wilhelm Lien" because "Home Federal made the

conscious decision not to distribute the remaining loan funds and chose not to pay Wilhelm." Ticor Br. 21. Although Ticor has identified no factual evidence that Home Federal's decision to withhold the final loan disbursement to its borrower (Altra) was the cause of Wilhelm's claim (*i.e.*, the reason it was not paid), we will assume that underlying fact for the sake of addressing Ticor's legal argument, which we reject.

At least one judicial decision supports Ticor's assumption that but-for causation is sufficient to satisfy the "created or suffered" exclusion. See *First American Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107, 1113 (Ariz. 2008) ("we conclude that the exclusion . . . applies whenever the insured intended the act causing the defect, not only when the insured intended the defect or when the insured engaged in misconduct"). But the overwhelming weight of authority is to the contrary. As a number of federal courts have recognized, the "created or suffered" language is intended to protect the insurer from liability for matters caused by the insured's own intentional misconduct, breach of duty, or otherwise inequitable dealings:

> The cases discussing the applicability of the 'created or suffered' exclusion generally have stated that the insurer can escape liability only if it is established that the defect, lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured or the insured either expressly or impliedly assumed or agreed to the defects or encumbrances in the course of purchasing the property

involved. The courts have not permitted the insurer to avoid liability if the insured was innocent of any conduct causing the loss or was simply negligent in bringing about the loss.

*Brown v. St. Paul Title Ins. Co.*, 634 F.2d 1103, 1107-08 n.8 (8th Cir. 1980) (Missouri law); accord, *Chicago Title Ins. Co. v. Resolution Trust Corp.*, 53 F.3d 899, 907 (8th Cir. 1995) (Minnesota law); *American Title Ins. Co. v. East West Fin.*, 16 F.3d 449, 455 (1st Cir. 1994) (Rhode Island law); *American Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 784-865(6th Cir. 1986) (Tennessee law); *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 758 F. Supp. 2d 476, 484-85 (S.D. Ohio 2010) (Ohio law); *Mid-South Title Ins. Corp. v. Resolution Trust Corp.*, 840 F. Supp. 522, 529-30 (W.D. Tenn. 1993) (Tennessee law). Neither this court nor any Indiana state court has defined the "created or suffered" exclusion, but the clear majority view among courts of other jurisdictions is that the exclusion applies only to intentional misconduct, breach of duty, or otherwise inequitable dealings by the insured. We predict that Indiana courts would adopt that view as well.

Ticor has not argued that Wilhelm's lien resulted from "deliberate, dishonest," or "illegal" dealings by Home Federal. See *Chicago Title Ins. Co.*, 53 F.3d at 907, quoting Joel E. Smith, Annotation, *Title Insurance: Exclusion of Liability for Defects, Liens, or Encumbrances Created, Suffered, Assumed, or Agreed to by the Insured*, 87 A.L.R.3d 515, 520 (1978). No evidence would support a finding that this decision was intentional misconduct.

Ticor argues instead that Home Federal breached a duty to Ticor to distribute the entirety of the loan proceeds,

citing two cases from the Eighth and Tenth Circuits, *Brown v. St. Paul Title Ins. Corp.*, 634 F.2d 1103 (8th Cir. 1980), and *Bankers Trust Co. v. Transamerica Title Ins. Co.*, 594 F.2d 231 (10th Cir. 1979). Both *Brown* and *Bankers Trust* reflect the understanding of the "created or suffered" exclusion we adopted above — that it is limited to situations in which the claim arises due to the intentional misconduct, breach of duty, or inequitable dealings by the insured. In each case, a bank financed a construction project with a loan secured by a first lien mortgage on the property. Each bank purchased title insurance, and each policy included both a mechanic's lien endorsement and a "created or suffered" exclusion similar to the ones in this case. And in each case, the developer defaulted.[5] After foreclosure proceedings were commenced, unpaid contractors filed mechanic's liens against the properties. In *Bankers Trust*, the contractors prevailed, and the bank sought indemnification from its insurer, which refused on account of the "created or suffered" exclusion. For the same reason, the insurer in *Brown* denied defense to its insured, which ultimately settled with the contractors. Each bank sued on the title insurance policy, and each insurer prevailed on

---

[5] In *Bankers Trust*, the default came before the final disbursement. 594 F.2d at 234. In *Brown*, the default came after the bank had disbursed the whole of its loan commitment, but the developer continued to work on the project after the default. 634 F.3d at 1105-06. Cost overruns, combined with a delay between the disbursement and the endorsement, resulted in the post-default work going uncompensated. *Id.* at 1107-08.

appeal. In *Bankers Trust*, the Tenth Circuit held: "Where, as here, work was performed and payment was not made up to the amount of the lender's loan commitment, the resulting mechanics' liens must be considered to have been created or suffered by the insured." 594 F.2d at 234 (emphasis omitted). In *Brown*, the Eighth Circuit likewise held that the mechanic's liens were "created or suffered by" the bank due to its "failure to furnish . . . the funds necessary to cover the improvements made." 634 F.2d at 1110.

Ticor contends that these cases are indistinguishable, and the district court granted summary judgment on the strength of their authority. That approach overlooks a factual difference that the *Bankers Trust* court called "critical," and that the *Brown* court also relied upon: these cases involved breaches of a duty because the insured banks had each *agreed* to make adequate funds available to pay the developers and their contractors. The parties in *Bankers Trust* and *Brown* had negotiated "disbursement agreements" whereby the *title insurers* assumed responsibility for both (a) securing lien waivers from potential claimants and, more important, (b) actually disbursing the loan funds to the various contractors as construction progressed. Both circuit courts concluded that the disbursement agreements "clearly contemplated that adequate funds were to be made available to [the insurer] in order to satisfy claims." *Bankers Trust*, 594 F.2d at 233; see *Brown*, 634 F.2d at 1110 ("the parties contemplated that [the bank] would provide adequate funds to pay for work completed prior to the

default"). By requiring the insurers themselves to disburse funds, and to do so only after receiving lien waivers from contractors, the disbursement agreements presupposed an obligation on the part of the banks to make sufficient funds available. The disbursement agreements were "critical." *Bankers Trust*, 594 F.2d at 232.

In this case, there was no disbursement agreement, and it was Home Federal rather than Ticor that both secured lien waivers and disbursed the funds when due under the loan agreement. Unlike in *Bankers Trust* and *Brown*, nothing in the insurance policy or the course of dealings indicates that Home Federal was bound to disburse the entirety of its loan commitment to Altra even if Altra was in default. In both *Bankers Trust* and *Brown*, the bank, the title insurer, and the developer and its contractors were involved in one complex business relationship: the bank put up the loan, and the title insurer performed title searches, secured lien waivers, and released funds to the developer and contractors for construction already performed. Here, there were instead two bilateral contractual relationships — one between Home Federal and Altra, and another between Home Federal and Ticor. The title insurance policy provided: "*At the time of each disbursement* of the proceeds of the loan, title must be searched . . . for possible liens" filed up to "the date of such disbursement." The policy did not require Ticor to perform a title search prior to any disbursement, as the disbursement agreements did in *Bankers Trust* and *Brown*. And it did not entrust the title insurer with the responsibility to disburse the funds. That

responsibility remained with Home Federal. In the absence of any indication from the insurance policy that Home Federal would continue funding the development after a default by its borrower (Altra), Home Federal owed no duty to Ticor to disburse the entire amount of the loan commitment to Altra to pay its contractors. Because of the Indiana statute giving strong priority to the construction lender's mortgage, it should have taken little trouble or expense for Ticor to honor the promise of its mechanic's lien endorsement by defending against the Wilhelm counterclaim.

Our reasoning here tracks that of the court in *Mid-South Title*, which distinguished *Bankers Trust* and *Brown* on precisely this basis. Where the developer defaulted on the construction loan and there was no disbursement agreement, the lender had no obligation to continue lending good money after bad:

> The fact that committed funds under the loan agreement remained undisbursed has no bearing on the potential or actual lien losses under the title policy *unless or until* an actual or implied duty arises between the parties to the title policy to provide the funds. In *Bankers Trust* and *Brown*, this duty was impliedly created by the disbursement agreement. However, absent a contractual relationship ancillary to the insurance contract at issue, there was no implied duty between these parties that all committed loan funds must have been expended. Here no such agreement existed.

840 F. Supp. at 528. This case is distinguishable from *Brown* and *Bankers Trust* on exactly the same grounds.[6]

Ticor's final argument is that the "created or suffered" exclusion applies because Home Federal is seeking to obtain an inequitable windfall by first refusing to pay Wilhelm and then seeking to recover on the title insurance policy. We disagree. Home Federal had no duty to pay Wilhelm directly. Both companies had contracts with Altra but not with each other, and Altra had defaulted on both. Home Federal paid an extra premium for the mechanic's lien endorsement, which specifically insured against "attempted enforcement of any [mechanic's] lien . . . arising from construction contracted for and/or commenced . . . prior to, at, or *subsequent to* the effective date of said policy, and any extension of said date." This provision covered not just the risk of an unknown prior lien (against which all title insurance policies insure), but the risk that a mechanic's lien seeking seniority would be filed *after* the effective date of the policy, even if the effort to seek seniority was a sure loser. Wilhelm's lien was of just this variety, filed for work performed after the latest update. If Wilhelm had established priority of its lien over the mortgage, it would have impaired Home Federal's

---

[6] Ticor seeks to distinguish *Mid-South Title* on the theory that Indiana law provides greater protection to a construction lender than Tennessee law. This argument echoes the mistaken argument, discussed above, that Ticor owed no duty to defend or indemnify here because the Wilhelm counterclaim was doomed on the merits.

security interest in the mortgage and reduced the amount of its recovery from the proceeds of the foreclosure sale by $6 million. However dim Wilhelm's prospects of success, that was precisely what Home Federal had insured against in the mechanic's lien endorsement. Ticor denied Home Federal's request for a defense, saying, effectively, "Handle this yourself — it's a slam dunk." Home Federal defended its position but eventually chose to settle with Wilhelm rather than risk paying for litigation and possibly losing priority of its security interest. Bearing those costs is a risk against which Home Federal had already insured through its policy with Ticor by paying for the mechanic's lien endorsement. As we see the case, Home Federal was seeking only the peace of mind it had paid for, not a windfall. The district court should have granted Home Federal's motion for summary judgment and denied Ticor's.

Having erroneously abandoned its insured against the Wilhelm counterclaim, Ticor is of course precluded from arguing that it was under no duty to indemnify Home Federal for liability it incurred as a consequence of that litigation. See *Frankenmuth Mut. Ins. Co. v. Williams*, 690 N.E.2d 675, 678-79 (Ind. 1997). We must remand the case for further proceedings on the issue of damages, which Home Federal's motion for summary judgment did not address. An insurer that refuses to defend its insured does so "at its peril," and where it breaches its duty to defend, "an insurer is ordinarily bound by the result of litigation to which its insured is a party, so long as the insurer had notice and the opportunity to control the proceedings." *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 762 N.E.2d 1227, 1231 (Ind. 2002), quoting *Liberty*

*Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 900 (Ind. App. 1992). Where the insured elects to settle the third-party's claim, the settlement is binding on the insurer so long as the claim was within the policy's coverage and the settlement was reasonable and made in good faith. See *Midwestern Indem. Co. v. Laikin*, 119 F. Supp. 2d 831, 842 (S.D. Ind. 2000) (interpreting Indiana law as supporting rule that a "consent judgment . . . bind[s] the insurer on issues of its insured's liability and the extent of the injured parties' damages, so long as (1) the coverage is eventually shown, and so long as the consent judgment (2) is not the product of bad faith or collusion and (3) falls somewhere within a broad range of reasonable resolutions of the underlying dispute"); *Cincinnati Ins. Co. v. Young*, 852 N.E.2d 8, 14 (Ind. App. 2006) (endorsing *Laikin*'s approach); see also 7C Appleman, *Insurance Law & Practice* § 4714, at 531 ("A settlement made by the insured of a pending action must be reasonable; and the court will examine the merits of the claim to determine that question.").

III. *Conclusion*

The judgment of the district court is REVERSED and REMANDED with instructions (a) to enter summary judgment for plaintiff Home Federal on the issue of liability on its claim that defendant Ticor breached its duty to defend under the policy and on defendant's counterclaim for a declaratory judgment, and (b) to conduct further proceedings consistent with this opinion.