**FRANKENMUTH MUTUAL INSURANCE COMPANY, Appellant (Garnishee Defendant Below),**

v.

**Jena WILLIAMS by next friend Tracy STEVENS, Appellee (Plaintiff Below).**

**No. 43S03–9501–CV–2.**

Supreme Court of Indiana.

Jan. 4, 1995.

---

Timothy W. Woods, Shawn P. Ryan, Jones, Obenchain, Ford, Pankow & Lewis, South Bend, for appellant.

Jay A. Rigdon, Rockhill, Pinnick, Pequignot, Helm & Landis, Warsaw, for appellee.

## ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

How much notice must an insurer receive concerning litigation against one of its policyholders to bind it to the resolution of litigation in which it did not participate? We hold that the notice in this case was sufficient to bind the carrier to the determination that its insured is liable.[1]

1. This appeal also presents questions about whether Frankenmuth may also be foreclosed from raising several contract defenses. Because the appeal has focused so far on the issue of notice, which we decide today adverse to Frankenmuth, we will set these remaining issues for oral argument and further briefing.

2. Throughout this incident, Tracy acted on behalf of Jena as her next friend pursuant to Ind.Code Ann. § 34-2-3-1 (West 1991).

3. This letter, sent to Michael in prison, referred to "an incident that occurred involving [J]ena Williams at your home on or about February 1, 1989, while she was in your care," and listed Jena as the "claimant." The letter described various terms and exclusions contained within the homeowners liability insurance policy he and

### I. History of the Case

The parties stipulated to the facts. Appellant Frankenmuth Mutual Insurance Company sold a homeowners liability insurance policy to Michael and Betty White which was in effect at the time of the incidents out of which this litigation arises. Tracy Stevens hired Betty to babysit her two daughters, one of whom is appellee Jena Williams, at Betty's home. In early 1989, Michael molested Jena while she was in Betty's care at the White residence. He was subsequently convicted of child molesting on a plea of guilty.

On October 18, 1989, Jena, by her next friend Tracy Stevens, filed suit against Michael alleging unlawful touching and battery.[2] Though it did not have notice of this suit for nearly a year, Frankenmuth was aware that Michael had been accused of child molestation, and it investigated the incident. On March 21, 1990, Frankenmuth sent a reservation of rights letter to Michael.[3] Three months later, Tracy amended her complaint to add Betty as a defendant, alleging that Betty was negligent in caring for Jena. The first notice to Frankenmuth that Michael and Betty had been sued came in October 1990 when Frankenmuth received a subpoena duces tecum and a non-party request for production of documents and/or things. Neither the subpoena nor the request for production specified the nature of the lawsuit, but both named Michael and Betty as defendants.

Betty and Tracy entered into a consent to judgment on April 29, 1991, more than six

Betty had purchased from Frankenmuth which "may restrict coverage for this incident."

The penultimate paragraph read as follows: The purpose of this letter is to advise you we will proceed with the investigation, handling and in defense of any suit against you with a full reservation of all rights and with the distinct understanding that no action heretofore or hereafter taken by us on your behalf shall constitute an admission of liability or admission of coverage under the policy nor is a waiver of any right to disclaim liability under the policy. (R. at 35)

Beneath the signature line for Jacqueline Vermette, Claims Representative, the letter indicated that Betty was sent a carbon copy.

months after Frankenmuth was served with the subpoena and request for production. Betty acknowledged liability in the amount of $75,000. Simultaneous to this consent, Tracy agreed not to execute the judgment against Betty. She planned instead to attempt to recover the $75,000 from Frankenmuth. The court approved the agreement the next day. The claim against Michael was unaffected.

Tracy moved to enforce the judgment against Frankenmuth as a garnishee defendant, and demanded payment of the $75,000. The trial court added Frankenmuth as a garnishee defendant and granted Tracy's subsequent motion for summary judgment. The court reluctantly found that Frankenmuth was collaterally estopped from contesting its liability since it had failed to defend its insured in the lawsuit. The Court of Appeals disagreed, finding the subpoena and other evidence insufficient to put Frankenmuth on notice that Betty was a defendant in a lawsuit which implicated its homeowners liability policy:

> [N]othing contained [in the document request] would have alerted Frankenmuth that the lawsuit against Betty White may have affected its policy with, or coverage of, Betty. A mere request for copies of insurance policies, amendments, and riders is insufficient to alert Frankenmuth that it may have been liable to indemnify Betty White if she was held liable in the suit.

*Frankenmuth Mut. Ins. Co. v. Williams by Stevens* (1993), Ind.App., 615 N.E.2d 462, 466. The Court of Appeals concluded that Frankenmuth could not have consciously chosen not to defend Betty because it did not have adequate notice.

We grant transfer to consider the adequacy of notice to Frankenmuth. We conclude that the notice here was adequate, and we next evaluate whether Frankenmuth was therefore estopped from denying liability.

## II. What Did Frankenmuth Know, and When Did It Know It?

■ Frankenmuth asserts that the subpoena and request for production of the Whites' insurance policy did not constitute notice of Tracy's suit sufficient for it to be bound by Betty's stipulation of negligence. In November 1990, one month after being subpoenaed, Frankenmuth sent a letter to Michael and Betty's attorney[4] reiterating its position that Michael's intentional acts were outside the scope of the policy. This conclusion was based in part on Frankenmuth's review of the statement Michael had previously given its investigator. The letter also contained the following two paragraphs:

> Based on these policy terms, conditions, and exclusions, it appears that there is no coverage that we can afford to your client in this matter.

> If, however, suit is filed, please send a copy of the suit to us for our review. We can then determine if there is coverage or duty to defend in this matter.

R. at 82–83. This second paragraph suggests that, notwithstanding Frankenmuth's earlier investigation, the letter's author, Frankenmuth Claims Representative Jacqueline Vermette, took no cognizance of the documents labeled "Williams v. Michael White and Betty White," complete with the cause number of the litigation and the court in which it was pending. The notice looks for all the world as a document from a lawsuit between the claimant of which Frankenmuth was aware and its own insureds.

The parties stipulate that Frankenmuth received no response to its request for a copy of any suit filed. Frankenmuth now asserts that without knowledge of whether the Whites had been served process in the suit, or a description of the nature of Tracy's claim in the lawsuit, they cannot be said to have had notice. We conclude, however, that Frankenmuth had sufficient notice of the suit against its insureds Michael and Betty.

---

4. Attorney David Heritier was originally hired by Michael or Michael's father in November 1989. After Betty was named a co-defendant in mid–1990, he initially represented her as well. On January 8, 1991, Heritier moved to withdraw as Betty's counsel since she had filed for divorce from Michael, thus creating a conflict of interest for Heritier.

The November letter from Frankenmuth contains no reference to Betty, but refers to its earlier reservation of rights letter to Michael.

Frankenmuth knew of and investigated the incident out of which the lawsuit arose. Both the subpoena duces tecum and the non-party request for production served on Frankenmuth not only named Jena Williams as the plaintiff and Michael and Betty as the defendants, but both documents also referenced the homeowners liability insurance policy Frankenmuth sold to the Whites. We hold that an insurance company which investigates a claim by an injured third party against its insured has notice of a lawsuit by the injured third party against its insured when it receives such a subpoena and a request to produce a copy of the policy it sold to its insured. Frankenmuth is therefore bound at least to the matters necessarily determined in the lawsuit. *See Hoosier Casualty Co. v. Miers* (1940), 217 Ind. 400, 27 N.E.2d 342 (insurer bound when it had notice and opportunity to control proceedings).

### *Conclusion*

We affirm the trial court's holding that Frankenmuth had sufficient notice to bind it on the issues decided by the settlement with Betty.

DeBRULER, DICKSON and SULLIVAN, JJ., concur.