**FRANKENMUTH MUTUAL INSUR-ANCE COMPANY, Appellant (Garnishee–Defendant below),**

v.

**Jena WILLIAMS, by Next Friend Tracy STEVENS, Appellee (Plaintiff below).**

No. 43S03–9501–CV–2.

Supreme Court of Indiana.

Dec. 23, 1997.

---

Timothy W. Woods, Shawn P. Ryan, Edward P. Benchik, South Bend, for Appellant.

Jay A. Rigdon, Warsaw, for Appellee.

SHEPARD, Chief Justice.

We earlier held in this case that the defendant's insurance carrier had received adequate notice of a tort complaint filed against the insured so as to trigger its duty to defend. We now examine the extent to which the carrier is bound to a settlement effected by the insured.

### Facts

According to stipulated or otherwise undisputed facts, Betty White began babysitting children in her home in 1988. (R. at 41.) In early 1989 she began keeping Tracy Stevens's two daughters, including Jena Williams. On one of these occasions, White's husband molested Jena.[1]

In October 1989, Jena and her mother filed a civil action against White's husband, accusing him of battery. They alleged that Jena sustained permanent emotional damages that have required and will continue to require professional care. White's husband admitted the molestation in his answer.

White and her husband held a homeowner's insurance policy with Frankenmuth Mutual Insurance Company. Although White's husband did not notify Frankenmuth that he had been sued for molesting Jena, the company learned that he had been accused of child molestation. Frankenmuth did not know that a civil action had been filed

---

1. He later pled guilty to criminal charges based on the molestation.

against White's husband, but it sent him a reservation of rights letter in March 1990, announcing its belief that the homeowner's policy did not cover child molestation. Frankenmuth also interviewed White's husband, and he admitted the molestation.

In June 1990, Jena added a second count to her complaint. It alleged that White herself had "negligently failed to supervise Jena Williams while she was in her home," and that White's own negligence was a cause of Jena's injuries. (R. at 15.) The amended complaint further alleged that White "knew or should have known of the conduct and propensities" of her husband but that she "failed to take adequate steps to insure that he would not be able to unlawfully touch Jena." (R. at 15.) In her answer, White denied the allegations and added that Stevens "seldom, if ever[,] paid" for the babysitting services White performed. (R. at 18.)

Although White did not notify Frankenmuth of the new count or forward to it copies of any litigation-related documents, Frankenmuth knew generally about the new count. A few months after Jena added the new count, Frankenmuth received a subpoena duces tecum and a request for production of documents held by a non-party.

In November 1990, Frankenmuth sent a letter to the attorney representing both White and her husband. The letter stated that the couple's insurance policy did not cover White's husband for the molestation. The company also requested copies of any documents related to the civil action against him, so that it could determine its duty to defend him.

At the beginning of 1991, the couple's attorney moved to withdraw from representing White because she was seeking to divorce her husband, whom the attorney continued to represent. The motion was granted.

In April 1991, White herself entered into a consent judgment with Jena and Stevens without Frankenmuth's knowledge or consent. The settlement granted judgment to Jena and Stevens on the negligent supervision count and awarded them $75,000, but it repeatedly stated that it did not affect the battery count against White's husband.

At the time of the consent judgment, the parties also entered into a covenant under which Jena and Stevens agreed not to execute the judgment against White's personal assets, but it left them free to recover the judgment from Frankenmuth under the homeowner's insurance policy. In June 1991, Williams commenced a proceeding supplemental to recover the judgment from Frankenmuth.

Frankenmuth moved for summary judgment on three grounds. First, it argued that White had breached her notice and cooperation duties under the policy by failing either to inform the company of the suit against her or to provide the company with legal documents relating to the suit. Second, the company argued that White's claim was excluded from the policy's coverage because Jena's injuries had resulted from the intentional act of White's husband. Third, Frankenmuth argued that White's babysitting amounted to a business activity that was excluded from coverage under the policy.

The trial court denied Frankenmuth's motion for summary judgment but granted Jena's. The trial judge believed that the decision of the Court of Appeals in *Liberty Mutual Ins. Co. v. Metzler*, 586 N.E.2d 897 (Ind.Ct.App.1992), *trans. denied*, compelled him to hold that Frankenmuth was collaterally estopped from opposing the action to recover the judgment because it had declined to defend White, its insured.

The Court of Appeals reversed, concluding that Frankenmuth had not received sufficient notice of the civil action to trigger its duty to defend. *Frankenmuth Mut. Ins. Co. v. Williams*, 615 N.E.2d 462 (Ind.Ct.App.1993).

We granted transfer and rendered a preliminary decision, holding that the subpoena duces tecum and the document request constituted sufficient actual notice to trigger Frankenmuth's duty to defend. *Frankenmuth Mut. Ins. Co. v. Williams*, 645 N.E.2d 605 (Ind.1995). Because Frankenmuth failed to defend White, we held that the company was "bound at least to the matters necessarily determined in the lawsuit." *Id.* at 608.

Because up to that point the litigation had focused on the notice issue, however, we set

the case for oral argument and further briefing in order to determine whether Frankenmuth was properly foreclosed from raising its contractual defenses.[2] We now hold that Frankenmuth is collaterally estopped from raising any defense under the clause excluding intentional acts from coverage. On the other hand, Frankenmuth is not estopped from raising the business activity defense, but remaining questions of fact require a remand for consideration of this defense.

## I. Intentional Act Exclusion

■ Frankenmuth has vigorously argued that the consent judgment is not covered by the homeowner's policy because the injuries to Jena resulted from an intentional act. The policy excludes coverage for personal injuries that are "caused intentionally by or at the direction of any insured." (R. at 68.) Throughout the appellate process Frankenmuth has also increasingly emphasized its contention that child molestation is not an "occurrence" or "accident" within the general scope of the policy's coverage. We think the issues underlying these arguments were necessarily determined in the consent judgment, such that Frankenmuth is collaterally estopped from raising them now. *See Frankenmuth,* 645 N.E.2d at 608.

Frankenmuth's intentional-act arguments are essentially an attempt to conflate the conduct of White with that of her husband in order to bring the consent judgment within the intentional act exclusion. The fundamental problem with this strategy, however, is that Jena never alleged that White engaged in any intentional conduct or participated in the molestation. Jena's complaint accused White of only negligent supervision, which supposedly exposed Jena to the risk that White's husband would molest Jena.[3]

Although White has never been accused of any intentional act in this litigation, Frankenmuth did not defend her. Perhaps as a result, White entered into a consent judgment, admitting to the only wrong of which she was accused, negligence. The consent judgment clearly left unimpaired the count charging White's husband with battery. Frankenmuth, once absent, is now estopped from complaining that all of Jena's damages flowed from the intentional act of molestation, rather than White's own negligence.

If the negligent complaint had gone to trial, Betty White might well have won. Where a person's negligence creates a situation in which a third party might commit an intentional tort or criminal act, the negligence is not a proximate cause of any resulting injuries unless the negligent person "realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." Restatement (Second) of Torts § 448 (1965); *cf. Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 520–21 (Ind.1994) (holding as matter of law that voluntary and willful suicide constitutes intervening cause). A factfinder in White's case would have had to decide (1) whether she was negligent and (2) whether she knew or should have known that her husband would molest Jena. Particularly in light of White's deposition testimony that she had no idea her husband was capable of child molestation, a factfinder might well have concluded that any negligence on her part was not a proximate cause of any of the injuries.

■ But that possibility will remain forever speculation, for White entered into the consent judgment when Frankenmuth did not defend her. That judgment represents a

---

2. In rebriefing, Frankenmuth has not relied on the argument, stressed previously, that White's failure to provide litigation documents constituted a breach of her cooperation duties under the homeowner's policy. Frankenmuth was correct to relent on this point, for the argument is meritless. In *Miller v. Dilts,* 463 N.E.2d 257 (Ind. 1984), we held that "[a]n insurance company must show actual prejudice from an insured's noncompliance with the policy's cooperation clause before it can avoid liability under the policy." *Id.* at 265. The only relevant prejudice

that Frankenmuth has ever alleged is that the company lacked proper notice of the nature of the action. We have already rejected that contention. *See Frankenmuth,* 645 N.E.2d at 608. Thus, the company has failed to demonstrate the requisite prejudice to justify strict enforcement of the cooperation clause.

3. We note that the homeowner's policy defines "occurrence" to include "repeated exposure to substantially similar conditions." (R. at 49.)

final legal conclusion that White committed negligence, that the negligence was a legal cause of Jena's injuries, and that damages for White's exposure of Jena to the risk of molestation amounted to $75,000. The time has passed for claiming that White's negligence was not a proximate cause of Jena's injuries. As the Court of Appeals observed in *Liberty Mutual,* an insurer may "refuse to defend or clarify its obligation by means of a declaratory judgment action," but "it does so at its peril." 586 N.E.2d at 902 (internal quotation marks omitted).

The cases Frankenmuth cites in opposition to this result are not on point. In *Great Cent. Ins. Co. v. Roemmich,* 291 N.W.2d 772 (S.D.1980), for example, the insurance company *brought a declaratory judgment action* contending that because of a motor vehicle exclusion clause, the company had no duty to defend or indemnify policyholding parents whose minor son injured a passenger while driving their car. The injured party argued that the parents' negligent supervision of their son or their negligent entrustment of the car to him was an independent cause of the injuries and, as a negligent act, should have been covered by the insurance policy. *Id.* at 775. The court ruled for the insurance company, but it did so by holding that the negligent entrustment claim derived from ownership of the vehicle, rather than independently, and thus was barred. That course is not available here because Frankenmuth never filed a declaratory judgment action and the consent judgment has already determined that White's negligence was a proximate cause of Jena's injuries.

In *Allstate Ins. Co. v. Gilbert,* 852 F.2d 449 (9th Cir.1988), an insurance company, again, *brought a declaratory judgment action* in a molestation case factually similar to the present one. The court focused on language in an intentional act exclusion, comparable to the one in this case excluding from coverage "[b]odily injury or property damage intentionally caused by any insured person." *Id.*

at 450, 453–54 (internal quotations omitted). The court held that the company was not responsible for defending or indemnifying the babysitting wife of the molester because the exclusion applied to all insureds if one of them committed the intentional act. *Id.* at 454. Its position seemed to be that the injuries simply resulted from an intentional act, the child molestation. Again, in the procedural posture of this case, the consent judgment has foreclosed that option. As a matter of Indiana law, White's negligence caused an injury—exposure to the risk of molestation—that must be considered separately from the injuries resulting from the molestation itself.[4]

We hold that Frankenmuth may not now assail the consent judgment's conclusion that White committed negligence that resulted in a legally distinct injury to Jena. White's acts were not child molestation and they were not intentional. The intentional act exclusion does not apply to her negligence. Although the intentional act exclusion applies to the acts of "any insured" it excludes coverage for "liability" which results, not "personal injury."

■ Frankenmuth spends much of its supplemental brief complaining that even if it had wanted to represent White in the proceeding, a conflict of interest would have prevented it from doing so. (Supp.Br. at 10–12.) This conflict supposedly existed because Frankenmuth would have benefitted from a finding of intentional conduct, while White would have benefitted from a finding of negligence.

This conflict of interest is manufactured. Frankenmuth decided not to represent White's husband, deeming the molestation excluded as an intentional act. There was no problem with that decision. In fact, White's husband admitted in his answer to the complaint that he had molested Jena, and he had been criminally convicted of it. There was

---

4. We note also that excluding White's negligence from the insurance policy is not consistent with the justification for such exclusions. Exclusion of intentional acts "is usually justified by the assumption that such acts would be encouraged, or at least not dissuaded, if insurance were available to shift the financial burden of the loss from the wrongdoer to the insurer." *American States Ins. Co. v. Borbor,* 826 F.2d 888, 895 (9th Cir. 1987). This justification does not apply to a babysitting spouse whose negligence facilitates her spouse's molestation of a child. *See id.*

no genuine question about whether the molestation had been intentional.

White, in contrast, was never accused of any intentional conduct. Jena accused her of negligent supervision. Both White and Frankenmuth would have benefitted from a finding that White was not negligent, and Frankenmuth would have had absolutely no opportunity to contend that White's conduct was intentional. The suggested conflict is nothing more than Frankenmuth's continued effort to conflate the allegations against White with those against her husband.[5] If Frankenmuth wanted to eliminate the negligent count in this litigation, it should have defended White, but it cannot now simply erase it from its brief.

## II. Business Activity Exclusion

■ It is axiomatic that Jena may recover from Frankenmuth only to the extent that Frankenmuth had a contractual duty to indemnify White. Because the consent judgment in no way addressed the issue of Frankenmuth's contractual obligations under the homeowner's policy, Frankenmuth is obviously not estopped from raising the business activity defense in this collection action. *Cf. Frankenmuth,* 645 N.E.2d at 608 (holding Frankenmuth bound "to the matters necessarily determined in the lawsuit").

Under that theory, Frankenmuth contends that White's babysitting amounted to a business activity, which was excluded from coverage under the homeowner's insurance policy. Under White's homeowner's policy, Frankenmuth agreed to indemnify White for injuries occurring in her home unless the injuries "result[ed] from activities in connection with an *insured's business.*" (R. at 68.)

Even in those situations, however, Frankenmuth would cover some injuries under its "Incidental Liability and Medical Payments Coverages." (R. at 66.) This coverage applied to injuries resulting from "incidental activities normally performed by minors." (R. at 67.) White argues that her babysitting services are included within this category of incidental business activities.

According to White's deposition testimony, her babysitting activities were informal but fairly extensive. In the beginning, White was just taking care of children belonging to some of her friends. Then, a neighbor began periodically leaving her children with White. White explained that the babysitting "wasn't an everyday type thing," that she would take care of children for other women "[j]ust whenever they needed or when the women wanted to go out somewhere and they needed a babysitter." (R. at 97.) Ultimately, however, the babysitting became at times a daily activity for White. She would even keep children overnight and on the weekends. In fact, Stevens, who had learned about White's services by word-of-mouth, had left Jena with White overnight when White's husband molested Jena on a Sunday morning.

White stated that on any given day, she might keep as many as four or five children. The parents would pay her "[w]hatever they could afford," (R. at 98), which sometimes was nothing. Even if a parent could not afford to pay her, however, White did not "have the heart" to turn away the parent's children. (R. at 99.) White admitted that Stevens had, in fact, paid White for keeping Jena.

There is no real factual dispute as to the substance of White's babysitting activities. The dispute centers on the interpretation of the homeowner's policy. The question is whether White's activities constitute an excluded business enterprise. Although the trial court opined that White "was operating a babysitting business for which no coverage under the policy was provided," (R. at 321), we believe the question is a close one.

In *American Family Mut. Ins. Co. v. Bentley,* 170 Ind.App. 321, 352 N.E.2d 860 (1976), the court held that "an insured is engaged in a business pursuit only when he

---

5. We also find curious Frankenmuth's suggestion that if it "had hired independent counsel to defend White in the underlying litigation, it could never recover its expenses incurred in defending White if it was [sic] later determined that there was no coverage." (Supp.Br. at 13–14.) We can think of no legal reason why Frankenmuth would be barred from such a recovery. This statement seems merely to reflect Frankenmuth's assumption that White would not be economically able to reimburse the company.

pursues a continued or regular activity for the purpose of earning a livelihood." *Id.* at 865. A federal court in northern Indiana assumed without deciding that babysitting was a business activity under an insurance exclusion clause. *Gulf Ins. Co. v. Tilley,* 280 F.Supp. 60, 65 (N.D.Ind.1967). In that case the babysitter had provided services "infrequently and not on a regular or large-scale basis, and then only with one or two children at a time at most." *Id.* at 62.

On the one hand, White's activities in the present case were far more extensive and business-like than those of the babysitter in *Gulf Ins. Co.* On the other hand, it is not at all clear that White relied on the babysitting services as a means of earning a livelihood. Indeed, she stated in her deposition that the amount of money she earned was so insignificant that she did not report it on her federal income tax return (though wrongly so). Frankenmuth has introduced no evidence to contradict White's own statements as to the extent of her babysitting activities.

We conclude that summary judgment for Jena is unsustainable as respects the business activity exclusion. While many of the facts are largely undisputed, others are in conflict or at least susceptible to different inferences. The standard for summary judgment requires that all inferences be drawn in favor of the non-moving party, namely Frankenmuth.

Accordingly, we reverse the trial court's grant of summary judgment for Jena as to the business activity exclusion. The trial court should take evidence on this question and rule on the merits.

### Conclusion

We reverse the trial court's grant of summary judgment and remand for consideration of the business activity exclusion on the merits.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.