**FILED**

Sep 08 2016, 9:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANTS

Mark A. Matthes
Yoder Ainlay Ulmer & Buckingham, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

David S. Wirth
Fairfield, Ohio

Kristine Lindley
Richard R. Skiles
Skiles DeTrude
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas A. Carpenter,

*Appellant-Plaintiff,*

v.

Lovell's Lounge and Grill, LLC and Jerry Dean Johnson,

*Defendants,*

and

The Cincinnati Specialty Underwriters Insurance Company, a subsidiary of the Cincinnati Insurance Companies,

*Garnishee-Defendant*

September 8, 2016

Court of Appeals Case No. 33A01-1602-CT-265

Appeal from the Henry Circuit Court

The Honorable Mary G. Willis, Judge

Trial Court Cause No. 33C01-1308-CT-27

The Cincinnati Specialty
Underwriters Insurance
Company,

*Appellee-Plaintiff,*

v.

Thomas A. Carpenter, Lovell's
Lounge and Grill, LLC, and
Jeremy Lovell d/b/a Lovell's
Lounge and Grill,

*Appellants-Defendants*

**Crone, Judge.**

# Case Summary

This case arises from an incident at Lovell's Lounge and Grill, in which

Thomas A. Carpenter was injured by Jerry Dean Johnson. Carpenter, Lovell's

Lounge and Grill, LLC, and Jeremy Lovell d/b/a Lovell's Lounge and Grill

(collectively "Appellants") appeal the judgment in favor of The Cincinnati

Specialty Underwriters Insurance Company ("CSU") on its action seeking a

declaratory judgment regarding its obligations under its insurance policy with

Lovell's Lounge. In that judgment, the trial court found that CSU had no

obligation to make payments under a consent judgment ("the Consent

Judgment"), in which Carpenter and Lovell's Lounge agreed that Carpenter's

injuries were caused by Lovell's Lounge negligence or that Lovell's Lounge was

vicariously liable for Johnson's negligence. Appellants argue that the trial court erred in finding that the Consent Judgment was the product of bad faith or collusion, and therefore collateral estoppel does not require CSU to be bound by the determinations of liability and damages in the Consent Judgment. Because we conclude that CSU has carried its burden to show by clear and convincing evidence that the Consent Judgment was the product of bad faith or collusion, we conclude that the trial court did not err in finding that collateral estoppel does not require CSU to be bound by the Consent Judgment. Therefore, we affirm.

## Facts and Procedural History

[2] Lovell's Lounge operates Lovell's Lounge and Grill ("the Lounge") in New Castle. Jeremy Lovell is the registered agent for Lovell's Lounge. In May 2012, Carpenter went to the Lounge, and within moments of entering, he was injured by Jerry Dean Johnson ("the Incident"). Johnson was charged with class C felony battery resulting in serious bodily injury for his actions in injuring Carpenter. At the trial, Carpenter testified that upon entering the Lounge, he heard Johnson say, "You're stupid for coming in here." Appellee's App. at 60. Carpenter also testified that Johnson hit him in the left jaw, causing him to fall, and kicked him in the left eye. *Id.* at 61. In addition, Carpenter testified that a couple months prior to the Incident, Johnson threatened to hurt him because Johnson was upset that Carpenter was dating Johnson's ex-girlfriend. *Id.* at 63-64. A jury found Johnson guilty as charged. Johnson appealed, and this Court

affirmed his conviction. *Johnson v. State*, No. 33A01-1306-CR-266 (Ind. Ct. App. Dec. 31, 2013), *trans. denied* (2014).

[3] In August 2013, Carpenter filed a verified complaint against Lovell's Lounge and Johnson based on the Incident. The complaint's "Facts" section contained the following allegation: "Within moments of entering [the] Lounge, Carpenter was brutally attacked by [Johnson] with numerous punches and kicks." Appellants' App. at 41. In the "Parties and Jurisdiction" section, the complaint alleged that "Johnson [was] an employee of and/or performed services for Lovell's Lounge." *Id*. at 40.

[4] Carpenter's complaint included three counts. In Count I, a claim for civil assault and battery, Carpenter alleged that "Johnson did effectuate a civil assault and battery upon [him]," and "intended to cause a harmful or offensive contact with [him]," which caused severe bodily injury to him. *Id*. at 42. In Count II, a negligence claim based on premises liability, Carpenter alleged that he was an invitee and that Lovell's Lounge breached its duty to him by failing to protect him from "expected criminal acts," failing to "prevent a reasonably foreseeable attack by [Johnson]," and "failing to manage the [Lounge] in a manner that took previously known threats or acts of violence into consideration of the safety of patrons, including Carpenter." *Id*. at 43. In Count III, a claim based on a Dram Shop Act violation, Carpenter alleged that Lovell's Lounge furnished Johnson with alcohol when Johnson was visibly intoxicated and Johnson's intoxication was a proximate cause of Carpenter's injury and damages. *Id*.

Lovell's Lounge was insured by CSU under a commercial general liability policy ("the Policy") and sought insurance coverage from CSU for Carpenter's complaint. However, in October 2013, CSU denied coverage to Lovell's Lounge on several grounds, including that the Policy contained an exclusion for assault and battery.

In July 2014, Carpenter filed a verified amended complaint against Lovell's Lounge and Johnson. The amended complaint was identical to the first complaint except for four paragraphs added to the end of Count III, which contained the following allegations:

> 38. Johnson owed Carpenter a duty not to cause harm to the person or property of Carpenter.
>
> 39. On or about May 12, 2012, Johnson negligently breached the duty of care by coming into physical contact with Carpenter at which time Johnson accidently caused bodily injury to Carpenter.
>
> 40. As a proximate result of Johnson's negligence Carpenter sustained injuries … .
>
> 41. Lovell's Lounge owed Carpenter, an invitee, a duty to protect him from foreseeable negligent harm, and/or [] to warn of foreseeable harm. Lovell's Lounge breached that duty.

*Id*. at 51.

[7]     Lovell's Lounge sought insurance coverage from CSU based on Carpenter's amended complaint. In a letter dated August 4, 2014, CSU again denied coverage based on the Policy's exclusion for assault and battery.

[8]     On November 14, 2014, attorney Mark A. Matthes filed an appearance for Carpenter. At that time, Lovell's Lounge was represented by attorney Robert Emmerson. Matthes and Emmerson attempted to negotiate a consent judgment between Carpenter and Lovell's Lounge. On December 17, 2014, Emmerson sent Matthes the following email:

> I would kindly request until Jan. 9th for Lovell's Lounge to file an answer. I am trying to get a final answer from Jeremy regarding his intentions, but I cannot sign the proposed consent judgment as drafted. As we have discussed, I do not believe my ethical obligations to the court would allow me to sign a judgment which states that Jerry Johnson was an agent of Lovell's Lounge at the time of the incident.

*Id*. at 288.

[9]     On December 31, 2014, Emmerson withdrew his appearance on behalf of Lovell's Lounge. During his deposition, Jeremy testified that Emmerson withdrew because Emmerson had charged him $7000 for legal fees and Lovell "told [Emmerson] I wasn't gonna pay him." *Id*. at 215.

[10]    On February 25, 2015, Carpenter and Lovell's Lounge submitted their Consent Judgment to the trial court, which the court approved and entered. The Consent Judgment provided in relevant part as follows:

2.  Upon entering Lovell's Lounge, [Johnson] negligently came into physical contact with Carpenter, accidently causing him serious bodily injury.  The harm was neither intended nor expected from the standpoint of Johnson or Lovell's Lounge.

….

6.  Carpenter was a business invitee, and as such, Lovell's Lounge owed a duty of reasonable care, including the duty to warn Carpenter of foreseeable negligent conduct that could cause harm.

7.  The negligent conduct engaged in by Johnson which caused the harm to Carpenter was foreseeable to Lovell's Lounge, however, while foreseeable to Lovell's Lounge, it was neither intended nor expected from the standpoint of Lovell's Lounge or its employees, including Carpenter.

8.  Lovell's Lounge breached its duty to warn Carpenter of the foreseeable danger, which breach was also a proximate cause of the harms of Carpenter.

9. Not only did Lovell's Lounge breach its duty to warn, [Johnson] performed services for and was an agent of Lovell's Lounge, and he was within the scope of his agency at the time of the negligent conduct which was the harm to Carpenter.

10.  Based on the foregoing, and to avoid the costs and expense of litigation Defendant Lovell's Lounge agrees that [Carpenter] has incurred injuries and damages, including pain and suffering, totaling $1,125,000.

*Id.* at 54-56. The Consent Judgment was signed by Jeremy Lovell, pro se, as the agent of Lovell's Lounge and by Matthes, as attorney for Carpenter. Jeremy was not a licensed attorney. Johnson was not a party to the Consent Judgment. On March 17, 2015, Johnson was dismissed from the case.

[11] In addition to the Consent Judgment, Carpenter, Lovell's Lounge, and Jeremy entered into a postjudgment agreement not to execute, in which Carpenter, in consideration for the Consent Judgment, agreed not to execute or enforce the Consent Judgment against Lovell's Lounge, to indemnify and defend Lovell's Lounge from any action that CSU might have against Lovell's Lounge for its execution of the Consent Judgment, and to pay Jeremy the first $7000 of any recovery by Carpenter against CSU.

[12] On March 17, 2015, Carpenter filed a motion for proceedings supplemental, asserting that the Policy provided coverage for the Consent Judgment and asking the trial court to order CSU to appear to answer to its obligations under the Policy. On March 23, 2015, Matthes, who was still representing Carpenter, filed an appearance on behalf of Lovell's Lounge. CSU filed an answer.

[13] On June 19, 2015, CSU filed a complaint seeking a declaratory judgment in cause number 33C01-1506-PL-45, naming as defendants Lovell's Lounge, Jeremy Lovell d/b/a Lovell's Lounge, and Carpenter. CSU asserted that it had no obligation under the Policy to make payment to Carpenter for the Consent Judgment because Carpenter's injuries were caused by assault and battery and the Policy contained an exclusion for assault or battery. CSU also asserted that

the Consent Judgment had been obtained by fraud, bad faith, or collusion; it had been procured by the unauthorized practice of law; it did not fall within a broad range of reasonable solutions of the underlying dispute; and it contained statements of fact and/or law that were not necessarily adjudicated and therefore were unenforceable against CSU. *Id.* at 69-73. On June 24, 2015, the declaratory judgment action was consolidated with the proceeding supplemental.

[14] On July 9, 2015, Matthes filed an appearance on behalf of Jeremy Lovell d/b/a Lovell's Lounge. In August 2015, Carpenter, Lovell's Lounge, and Jeremy filed a motion to dismiss CSU's complaint for declaratory judgment and a supporting brief, asserting that CSU's complaint failed to state a claim because CSU was barred by collateral estoppel from relitigating facts and issues determined in the Consent Judgment. *Id.* at 78-110. In September 2015, Lovell's Lounge and Jeremy filed a counterclaim against CSU, alleging that CSU breached the Policy by failing to defend and/or indemnify Lovell's Lounge for Carpenter's lawsuit against it.

[15] In October 2015, CSU filed a motion to set aside the Consent Judgment, a cross-motion for summary judgment, and a memorandum in opposition to Carpenter, Lovell's Lounge, and Jeremy's motion to dismiss and in support of its cross-motion for summary judgment, arguing, among other things, that the Consent Judgment was the product of bad faith or collusion and therefore was not binding on CSU. In November 2015, Carpenter, Lovell's Lounge, and Jeremy filed a cross-motion for partial summary judgment on CSU's complaint

for declaratory judgment, arguing that because CSU failed to file a timely declaratory judgment action, it was barred from challenging the Consent Judgment. *Id.* at 290. In December 2015, the trial court held a hearing on the motion to dismiss CSU's complaint, the motion to set aside the Consent Judgment, and the cross-motions for summary judgment.

[16] In January 2016, the trial court issued findings of fact, conclusions thereon, and order of judgment, finding in relevant part that the Consent Judgment was procured by bad faith and/or collusion, and therefore the doctrine of collateral estoppel did not apply to bind CSU to the Consent Judgment. Specifically, the trial court found as follows:

> Under Indiana law, a consent judgment will not bind an insurer if the consent judgment was the product of bad faith or collusion. *Midwestern Indem. Co. v. Laikin*, [119 F. Supp. 2d 831, 843 (S.D. Ind. 2000)].
>
> ….
>
> The Court finds that [Carpenter, Lovell's Lounge, and Jeremy] do not enter these proceedings with clean hands. Carpenter and Lovell clearly operated with "furtive design"–and without any concern for the actual facts–in trying to construct a Consent Judgment that would fall within CSU's coverage and thereby allow them to jointly profit. There is clearly no "good ground to support" the Consent Judgment under the actual facts presented at the criminal trial or applicable law. The Consent Judgment is clearly "unreasonable and groundless" when viewed in relation to the actual facts of what happened in the Incident. Its procurement obviously involved misrepresentation, lack of serious negotiations on damages, attempts to affect CSU's

insurance coverage, [and] profit to both Carpenter and Lovell. Most troubling to the court is a written promise that Carpenter would pay [Jeremy] the first $7,000.00 of any recovery against CSU for the consent judgment. Thus, the Court finds that the Consent Judgment was presented in bad faith and procured through collusion.

*Id*. at 32-33.

[17] The trial court concluded that CSU had no obligation under the Policy to make payment to Carpenter for the Consent Judgment or for the Incident between Johnson and Carpenter. The trial court denied Carpenter, Lovell's Lounge, and Jeremy's motion to dismiss CSU's complaint and their cross-motion for partial summary judgment. Also, the trial court granted CSU's motion to set aside the Consent Judgment and its cross-motion for summary judgment and directed final judgment in favor of CSU on its declaratory judgment action. Finally, the trial court dismissed Lovell's Lounge and Jeremy's counterclaim and denied Carpenter's motion for proceedings supplemental as moot. This appeal ensued.

## Discussion and Decision

[18] Appellants argue that the trial court erred in granting CSU's summary judgment motion and denying theirs. Our standard of review is well settled:

> When reviewing the grant or denial of summary judgment, this Court applies the same legal standard as a trial court: summary judgment is appropriate where no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. The standard of review is not altered by cross

motions for summary judgment on the same issues. A party appealing the denial of summary judgment carries the burden of persuading this Court that the trial court's decision was erroneous. Moreover, when the material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts; and, if the issue presented is purely a question of law, we review the matter de novo. In addition, our standard of review is not changed by the trial court's entry of findings of fact and conclusions thereon. Although the findings and conclusions provide valuable insight into the trial court's decision, they are not binding upon this Court.

*C.M.L. ex rel. Brabant v. Republic Servs., Inc.*, 800 N.E.2d 200, 202 (Ind. Ct. App. 2003) (citations omitted), *trans. denied* (2004).[1] "[W]e will affirm a summary judgment order if it is sustainable upon any theory or basis found in the record." *E.J. ex rel. Jeffrey v. Okolocha*, 972 N.E.2d 941, 945 (Ind. Ct. App. 2012).

[19] Appellants challenge the trial court's finding that collateral estoppel does not apply to bind CSU to the Consent Judgment.

> Collateral estoppel, also referred to as "issue preclusion," describes the binding effect of a previous judgment regarding a particular issue on the parties and their privies in a subsequent action. *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 900 (Ind. Ct. App. 1992) [, *trans. denied* (1993)]. "The doctrine of collateral

---

[1] We note that other than briefly mentioning that the court on appeal must consider each cross-motion for summary judgment separately, Appellants fail to set forth the standard of review in their brief as required by Indiana Appellate Rule 46(A)(8)(b). In addition, the table of contents of Appellants' brief fails to include the subheadings of their thirty-five-page argument section and the page on which they begin as required by Indiana Appellate Rule 46(A)(1).

estoppel applies to insurance contracts and an insurer is ordinarily bound by the result of litigation to which its insured is a party, so long as the insurer had notice and opportunity to control the proceedings." *Id.* An insurer may avoid the effects of collateral estoppel by: (1) defending the insured under a reservation of rights in the underlying tort action, or (2) filing a declaratory judgment action for a judicial determination of its obligations under the policy. *Id.* at 902 (citing *State Farm Mut. Auto. Ins. Co. v. Glasgow*, 478 N.E.2d 918 (Ind. Ct. App. 1985)). Either of these actions will preserve an insurer's right to later challenge a determination made in the prior action. An insurer may also elect not to defend an insured party in a lawsuit if, after investigation of the complaint, the insurer concludes that the claim is "patently outside the risks covered by the policy." *Id.* at 901 (citations omitted). Such a course is taken at the insurer's peril because the insurer will be bound *at least* to the matters necessarily determined in the lawsuit. *Frankenmuth Mut. Ins. Co. v. Williams*, 645 N.E.2d 605, 608 (Ind. 1995) (citation omitted) (emphasis added).

*State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 762 N.E.2d 1227, 1230-31 (Ind. 2002).

[20] Specifically, Appellants assert that collateral estoppel applies to bar CSU from relitigating the facts and issues determined in the Consent Judgment because CSU failed to defend Lovell's Lounge under a reservation of rights or file a declaratory judgment action *prior* to the trial court's approval of the Consent Judgment. They contend that this case "falls squarely under the [*Metzler*, 586 N.E.2d 897, and *Frankenmuth Mut. Ins. Co. v. Williams*, 690 N.E.2d 675 (Ind. 1997) ("*Frankenmuth II*")] line of cases." Appellants' Br. at 31. We disagree.

[21] In *Metzler*, the insured's truck driver got into an argument and drove his semi-tractor into a pub, killing one person and injuring many others. The truck driver was convicted of various counts of murder, attempted murder, battery, and operating while intoxicated. "On appeal, [he] claimed the evidence did not show he was acting with the requisite intent to commit the crimes charged. Our supreme court rejected [his] argument, affirmed the convictions, and indicated the evidence showed [he] intended the consequences of his act." 586 N.E.2d at 899. The injured parties sued the driver, alleging that their injuries were caused by his negligence. The driver was served with a complaint and summons but did not respond. The insurer also had notice of the lawsuit but did nothing. A default judgment was entered against the driver. The injured parties brought proceedings supplemental naming the insurer as garnishee defendant. The insurer brought a counterclaim seeking a declaratory judgment that the insurance policy did not cover the driver's conduct. The trial court granted the injured parties' summary judgment motion, finding that they were entitled to recover from the insurer the amount of their judgment against the truck driver.

[22] On appeal, the insurer contended that collateral estoppel did not apply to bind it to the underlying tort judgment because it had the right not to defend or intervene in the underlying lawsuit once its own independent investigation revealed that there was no coverage under the insurance policy. *Id*. at 900. The *Metzler* court acknowledged that the insurer had a right not to defend, but rejected the notion that the insurer's right not to defend would operate to preclude the application of collateral estoppel, stating "it is clear that an insurer

may refuse to defend its insured, but at its own peril." *Id*. at 901. The *Metzler* court also observed,

> An insurer, having knowledge its insured has been sued, may not close its eyes to the underlying litigation, force the insured to face the risk of that litigation without the benefit of knowing whether the insurer intends to defend or to deny coverage, and then raise policy defenses for the first time after judgment has been entered against the insured.

*Id*. at 902. The *Metzler* court concluded that the insurer was collaterally estopped from challenging whether the truck driver acted negligently or intentionally in causing the injured parties' damages. *Id*.

[23] In *Frankenmuth II*, a wife was babysitting a child in her home, and her husband molested the child. Child and her mother sued husband and wife, the holders of a homeowner's insurance policy. Their lawsuit included a negligence claim against the wife for her alleged negligence in supervising the child. The insurer investigated the claim and concluded that because husband's conduct was intentional, the tort claim was not covered by the insurance policy. The insurer neither defended husband and wife under a reservation of rights nor filed a declaratory judgment action. The wife entered into a consent judgment without the insurer's knowledge or consent, in which she admitted that she had been negligent and that her negligence was the proximate cause of the child's injuries. The child and her mother then initiated proceedings supplemental to recover the judgment from the insurer. The insurer moved for summary judgment, arguing that the insurance policy did not provide coverage for the

consent judgment because the injuries to the child resulted from an intentional act. The trial court denied the insurer's summary judgment motion on the basis that the insurer was collaterally estopped from opposing the action to recover the judgment because it had declined to defend its insured. 690 N.E.2d at 677.

[24] The insurer appealed, again arguing that the insurance policy did not cover the child's injuries because they resulted from an intentional act. The *Frankenmuth II* court stated that the insurer was attempting to conflate husband's conduct with that of the wife in order to bring the consent judgment within the policy's intentional act exclusion, and that the insurer's argument was fundamentally flawed because the lawsuit had never alleged that wife had engaged in any intentional conduct that caused the child's injuries. *Id.* at 678. The court noted that the insurer had neither defended the insured under a reservation of rights nor brought a declaratory judgment action to clarify its obligation under the insurance policy. *Id.* at 679. The court explained, "[A]n insurer may 'refuse to defend or clarify its obligation by means of a declaratory judgment action,' but 'it does so at its peril.'" *Id.* (quoting *Metzler*, 586 N.E.2d at 902). The court declared that the insurer was "now estopped from complaining that all of [the child's] damages flowed from the intentional act of molestation, rather than [the wife's] own negligence." *Id.* at 678.

[25] *Metzler* and *Frankenmuth II* are distinguishable because neither case involved the issue raised here: namely, whether collateral estoppel operates to bind the insurer to a consent judgment where the consent judgment was procured by bad faith and/or collusion. *Metzler* did not even involve a consent judgment.

Accordingly, we are unpersuaded by Appellants' contention that *Metzler* and *Frankenmuth II* dictate that collateral estoppel applies here.

[26] Although it is not dispositive, we find some guidance for the resolution of this case in *Laikin*, 119 F. Supp. 2d 831,[2] which the trial court relied on. In *Laikin*, renters were injured by a fire in a mobile home and sued the owners in Marion Superior Court. The owners demanded that their insurer indemnify and defend them in the law suit. The insurer denied coverage and filed a declaratory judgment action in federal court seeking a declaration that it owed no duty to indemnify or defend the owners. Meanwhile, in state court, the owners and the renters entered into a settlement agreement, which was approved by the state court.

[27] Then, in the declaratory judgment action, the insurer filed a summary judgment motion arguing, among other things, that it had no duty to pay the agreed judgment because it was procured by fraud, collusion or bad faith. Before reviewing the insurer's claim, the *Laikin* court explained that its review of the issue was based on the assumption that the insurer had breached its contract by refusing to provide a defense and indemnity for the losses arising from the fire. Because Indiana law controlled the parties' claims and defenses, and the Indiana Supreme Court had not directly addressed the issue, the *Laikin* court

---

[2] Another panel of this Court adopted *Laikin*'s reasoning in the context of deciding that the trial court erred in permitting the insurer to intervene in its own name for purposes of appealing the judgment against its insured. *Cincinnati Ins. Co. v. Young*, 852 N.E.2d 8, 14 (Ind. Ct. App. 2006), *trans. denied* (2007).

began its analysis by reviewing Indiana cases that dealt with collateral estoppel to predict how our supreme court would resolve the issue. After discussing *Frankenmuth II* and *Metzler,* the court went on to consider the Restatement (Second) of Judgments and cases from Minnesota, Arizona, and Texas that had dealt with allegations that a consent judgment had been procured by bad faith and/or collusion. *Id*. at 836-42. From this broad swath, the *Laikin* court concluded that

> Indiana courts would adopt an approach to this case in which the consent judgment with a covenant not to execute would bind the insurer on issues of its insured's liability and the extent of the injured parties' damages, so long as (1) the coverage is eventually shown, and so long as the consent judgment (2) is not the product of bad faith or collusion and (3) falls somewhere within a broad range of reasonable resolutions of the underlying dispute.

*Id*. at 842.

[28] As for the burdens of production and proof on the issues of bad faith, collusion, and reasonableness, the *Laikin* court discussed two different approaches. In one approach, the claimant has the burden of showing by a preponderance of the evidence that the amount of the judgment was reasonable and prudent. *Id*. at 841. In the second approach, the insured has the initial burden of producing evidence that the settlement is "'prima facie reasonable in amount and untainted by bad faith,'" and if this burden is satisfied, then the insurer has "'the burden of demonstrating by a preponderance of the evidence that it is not liable because the settlement is neither reasonable nor reached in good faith.'"

*Id*. at 841 (quoting *Griggs v. Bertram*, 443 A.2d 163, 173-74 (N.J. 1982)). However, the *Laikin* court did not need to predict precisely which approach Indiana would take because the results in the case would have been the same under either approach. *Id*. at 842.

[29] The insurer argued that the terms of the consent judgment were so unreasonable and the settlement amount of $1.6 million was so unreasonably excessive that the consent judgment must have been the result of bad faith or collusion. The *Laikin* court noted that the insurer had presented no direct evidence of bad faith or collusion, and ultimately concluded as a matter of law that the terms of the consent judgment and the amount of the settlement were not unreasonable and could not reasonably permit an inference of collusion or bad faith. *Id*. at 850.

[30] Here, Appellants claim that *Laikin* applies only where an insurer files a declaratory judgment action prior to the court's approval of a consent judgment. They contend that the *Laikin* court "explained" that because the insurer had filed a declaratory judgment action, *Frankenmuth II* and *Metzler* "did not control." Appellants' Br. at 31 (citing 119 F. Supp. 2d at 837). Although the *Laikin* court recognized differences between its case and *Frankenmuth II* and *Metzler*, including that the insurers in those cases did not file declaratory judgment actions, we are not persuaded that, even if the insurer in *Laikin* had failed to file a declaratory judgment action, the *Laikin* court would have concluded that *Frankenmuth II* and *Metzler* controlled whether the consent judgment would bind the insurer because those cases did not involve allegations

of bad faith or collusion.[3]  In any event, we have already concluded that *Frankenmuth II* and *Metzler* are not dispositive of this case.

[31]  Furthermore, Appellants' application of *Laikin* could result in substantial injustice because it would mean that even if a consent judgment is procured by bad faith or collusion, the insurer is bound by it unless the insurer had defended the insured under a reservation of rights in the underlying tort action or filed a declaratory judgment action prior to the approval of the consent judgment. Appellants have not offered, nor can we discern, any sensible, equitable justification to bar an insurer from challenging a consent judgment where it was obtained by bad faith and/or collusion even if the insurer did not file a declaratory judgment action prior to the consent judgment.  Appellants'

---

[3]  Appellants also assert that this Court has "expressly limited *Laikin*'s applicability to where a declaratory judgment action had been timely filed." Appellant's Br. at 33 (citing *Klepper v. ACE American Ins. Co.*, 999 N.E.2d 86, 93 (Ind. Ct. App. 2014), *trans. denied*). Appellants' characterization of *Klepper* is overbroad, and the quote they provide from *Klepper* is out of context and incomplete.  In *Klepper*, the insurer had agreed to defend its insured under a reservation of rights, and had spent considerable resources doing so before the insured entered into a settlement agreement with the plaintiffs without the insurer's consent.  The settlement agreement provided that a certain amount was to be collected from the insurer "to the extent the damages fall within the scope" of the policy.  999. N.E.2d at 89.  On appeal, the *Klepper* court was asked to consider whether the insurance company could rely on the insurance policy's provisions (1) requiring its insured not to make a "voluntary payment" without the insurer's consent and (2) limiting the insurer's payment under the policy to those sums that the insured became "legally obligated to pay" and whether those provisions precluded coverage under the policy.  *Id*. at 90-98.  In addressing these issues, the *Klepper* court reviewed Indiana cases, including the adoption of *Laikin*'s reasoning in *Young*, 852 N.E.2d at 14.  Notably, the significance of *Laikin* to *Klepper* was the second issue in *Laikin*, which we have not discussed because it is irrelevant to this case.  The second issue in *Laikin* was whether the insurer could rely on the insurance policy's "legally obligated to pay" language and thereby avoid any duty to pay the consent judgment because the settlement agreement did not impose any legal obligation on the insured to satisfy the judgment.  The quote in Appellants' brief is taken from *Klepper*'s description of *Young*'s adoption of *Laikin*, and is mere dicta. In any event, the *Klepper* court distinguished *Laikin* because *Laikin* "was premised on the assumption that the insurer had breached the insurance contract." *Id*. at 95.  In *Klepper*, the parties vigorously disputed whether the insurer had breached the contract.  The *Klepper* court concluded that the "voluntary payment" and "legally obligated to pay" provisions precluded coverage, and therefore the insurer was not bound by the settlement agreement.  *Id*. at 99.

position would actually encourage insureds to engage in collusion if it was clear that no coverage was available and the insurer had not done anything to protect its interests. We agree with CSU's observation that insurers would always have to file pre-emptive declaratory judgment actions in case the insured might later enter into a collusive consent judgment. Therefore, we conclude that even though CSU did not defend Lovell's Lounge under a reservation of rights or file a declaratory judgment action before the Consent Judgment was approved, if the Consent Judgment is the product of bad faith or collusion, it will not bind CSU.

[32] Indiana courts have not addressed what constitutes bad faith or collusion in the context of an insured's procurement of a consent judgment. In considering whether an insurer has acted in bad faith in denying an insured's claim, we have said that a "'finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.'" *Missler v. State Farm Ins. Co.*, 41 N.E.3d 297, 302 (Ind. Ct. App. 2015) (quoting *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 677 (Ind. Ct. App. 2007), *trans. denied*). "To prove [an insurer's] bad faith [in denying a claim], the plaintiff must establish by clear and convincing evidence that the insurer had knowledge that there was no legitimate basis for denying liability." *Id*. Here, CSU is claiming that the Consent Judgment was the product of bad faith or collusion, and therefore we conclude that it has the burden to prove by clear and convincing evidence that the Consent Judgment was procured by bad faith or collusion. In this respect, we decline to adopt for this case either of the two approaches to the

production and burden of proof discussed in *Laikin*. Our decision to place the burden of proof wholly on CSU reflects the fact that CSU did not file its declaratory judgment action before the Consent Judgment was approved.

[33]  The Tenth Circuit Court of Appeals has also addressed whether a consent judgment was procured by collusion, and that case provides some helpful direction:

> Any negotiated settlement involves cooperation to a degree. It becomes collusive when the purpose is to injure the interests of an absent or nonparticipating party, such as an insurer or nonsettling defendant. Among the indicators of bad faith and collusion are unreasonableness, misrepresentation, concealment, secretiveness, lack of serious negotiations on damages, attempts to affect the insurance coverage, profit to the insured, and attempts to harm the interest of the insurer. They have in common unfairness to the insurer, which is probably the bottom line in cases in which collusion is found.

*Cont'l Cas. Co. v. Hempel*, 4 F. App'x 703, 717 (10th Cir. 2001) (quoting *Pruyn v. Agric. Ins. Co.*, 42 Cal. Rptr. 2d 295, 305 (Cal. Ct. App. 1995)).

[34]  We note that not all the considerations described in *Hempel* necessarily need to be found in every case of bad faith or collusion, and there may be other considerations not recognized in *Hempel*, but it is a good starting point for determining whether the Consent Judgment here was procured by bad faith or collusion. As for reasonableness, the Tenth Circuit considered "'what a reasonable prudent person in the position of [the policyholder] would have settled for on the merits of plaintiff's claim.'" *Id.* (quoting *Miller v. Shugart*, 316

N.W.2d 729, 735 (Minn. 1982)). Notably, the issues of bad faith or collusion are closely related to the issue of reasonableness of settlement amount, and the evidence often overlaps. *Laikin*, 119 F. Supp. 2d at 843.

[35] Turning now to the specific circumstances present here, we have no difficulty in concluding that there is clear and convincing evidence that the Consent Judgment was obtained in bad faith or collusion. The Consent Judgment stipulates that Johnson "negligently came into physical contact with Carpenter, accidently causing him serious bodily injury." Appellants' App. at 54. This is patently unreasonable in light of all the available evidence and the allegations in the verified amended complaint that Johnson "brutally attacked" Carpenter "with numerous punches and kicks." *Id*. at 48. Carpenter has testified repeatedly that Johnson punched him and kicked him. There is no evidence that would support a reasonable inference that Johnson accidently punched and kicked Carpenter. Rather, all the evidence indicates that Johnson intentionally punched and kicked Carpenter.

[36] In addition, the Consent Judgment stipulates that Johnson "performed services for and was an agent of Lovell's Lounge" and "was within the scope of his agency at the time of the negligent conduct which was the harm to Carpenter." *Id*. at 56. This stipulation is particularly troubling because the amended complaint did not include any allegations regarding an agency relationship between Lovell's Lounge and Johnson. Although Jeremy testified that Johnson occasionally performed repairs for the Lounge in exchange for free beer, their relationship does not remotely appear to be one of principal/agent. There is no

evidence that Johnson had an agreement with Lovell's Lounge to perform services or to represent Lovell's Lounge in any respect. In addition, there is absolutely no evidence that he was performing any services for the Lounge at the time of the Incident.[4] We conclude that there is no rational basis from which one could reasonably infer that Johnson was an agent of Lovell's Lounge or that he was acting within the scope of his agency at the time of the Incident.

[37] As for whether Lovell's Lounge and Carpenter engaged in serious negotiations to reach a reasonable settlement, we conclude that the evidence clearly supports the contrary. Appellants claim that approximately seven months elapsed between July 2014, when the amended complaint was filed, and February 2015, when the Consent Judgment was executed, which does not support a finding that the parties failed to engage in serious negotiations. However, the record shows that the parties were not involved in negotiations until after CSU denied coverage the second time in August 2014. Matthes did not appear for Carpenter until November 14, 2014. In December 2014, the attorney for

---

[4] Vicarious liability "is a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer." *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 147 (Ind. 1999). Vicarious liability may be imposed through various legal doctrines, including respondeat superior, apparent or ostensible agency, agency by estoppel, and the nondelegable duty doctrine. *Id*. "Apparent agency is a doctrine based in agency law." *Id*. at 148. "[F]or the liability of an agent to be imputed to a principal, an agency relationship must exist, and an essential element of that relationship is that the agent must 'act on the principal's behalf;' the agent must consent to act on the principal's behalf, as well as be subject to the principal's control." *Smith v. Delta Tau Delta, Inc.*, 9 N.E.3d 154, 164 (Ind. 2014) (quoting Restatement (Third) of Agency § 1.01 (2006)). Respondeat superior is a tort theory of vicarious liability. *Sword*, 714 N.E.2d at 148. "Under respondeat superior, an employer, who is not liable because of his own acts, can be held liable 'for the wrongful acts of his employee which are committed within the scope of employment.'" *Id*. (quoting *Stropes v. Heritage House Childrens Ctr.*, 547 N.E.2d 244, 247 (Ind. 1989)).

Lovell's Lounge withdrew his appearance immediately following his email to Carpenter's attorney, in which he explained that he could not honor his ethical obligations and stipulate that Johnson was an agent of Lovell's Lounge and was acting within the scope of his agency at the time of the Incident. Also, despite the requirement that a corporation be represented by counsel in all cases, Lovell's Lounge did not obtain new counsel, and Jeremy, who is not authorized to practice law in the State of Indiana, signed the Consent Judgment.[5] *See* Ind. Code § 34-9-1-1 (providing that "a corporation and any organization required to make application to the secretary of state under IC 25-11-1-3 must appear by attorney in all cases."). Less than a month later, Carpenter's attorney filed an appearance on behalf of Lovell's Lounge.[6] These circumstances show not only that Lovell's Lounge was not seriously negotiating with Carpenter, but also that they were trying to affect coverage by purposely remaking the Incident so that it would not fall under the Policy's assault and battery exclusion.

[38] Because there is clear and convincing evidence that the Consent Judgment was obtained by bad faith or collusion, we conclude that collateral estoppel does not apply and therefore CSU is not bound by the Consent Judgment.[7] Accordingly,

---

[5] The trial court would have been within its authority to withhold approval of the Consent Judgment based on Lovell's Lounge's lack of legal representation.

[6] Appellants wrongly claim that attorney Matthes did not appear for Lovell's Lounge until after CSU filed its declaratory judgment action. Appellants' Br. at 36. Matthes appeared for Lovell's Lounge on March 23, 2015, one week after Carpenter filed his motion for proceedings supplemental. Appellants' App. at 6. Matthes appeared for Jeremy Lovell d/b/a/ Lovell's Lounge on July 9, 2015. *Id*. at 8.

[7] Because of our resolution of this issue, we need not address CSU's claim that the Consent Judgment is void because it was obtained by the unauthorized practice of law.

we affirm the trial court's grant of CSU's summary judgment motion, its denial of Appellants' cross-motion for summary judgment, and judgment in favor of CSU on its declaratory judgment action.

[39] Affirmed.

Najam, J., and Robb, J., concur.